BERNARD D. O'CONNELL *vs.* LENOIR A. DOW & others.

Middlesex.　December 1, 1902. — February 24, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & LORING, JJ.

*Will. Witness. Practice, Civil,* Exceptions. *Depositions.*

Where a petitioner for the probate of a will, named in the instrument as executor, is one of five attesting witnesses, and is present in court, he may be compelled by the probate judge to testify in support of his petition in addition to the other four witnesses. Whether, if the judge in his discretion does not require it, the rule that all attesting witnesses must be called would apply, so as to require the testimony of more than three, was not passed upon.

The rule that a witness can be cross-examined on the whole case applies to one called as an attesting witness to a will.

Under Pub. Sts. c. 169, § 21, (R. L. c. 175, § 23,) *semble,* that one convicted of bribery is not a competent attesting witness to a will.

If one convicted of an infamous crime, who subscribed a will as an attesting witness, has testified at the trial of certain issues relating to the will but not involving the question of his competency as an attesting witness, the record of his conviction is admissible as affecting his credibility.

Allowing a witness to be asked on cross-examination, whether he was the respondent to a certain petition for his disbarment, preliminary to raising the question of the admissibility of the record of his disbarment, that record afterwards being excluded by the judge, is not the subject of exception.

An impropriety on the part of counsel in stating in his opening argument matters in disparagement of the adverse party, which have been ruled out by the presiding judge, met by a ruling of the judge that the case should be decided by the jury on the evidence and not on the opening statement, does not as matter of law entitle the adverse party to a new trial. If that party wishes for further instructions he can ask for them, but the judge is not bound to end the trial because the statements have been made.

No exception lies to a statement by counsel in his opening argument of what he expects to prove.

The certificate of a magistrate as to the service of notice of the taking of a deposition is not conclusive as to the facts stated, and a magistrate, who has certified that he caused a true and attested copy of the notice to be served, can be allowed to testify that the copy was a correct one but that it was copied, written, attested and served by the party in whose behalf the deposition was taken.

Under Pub. Sts. c. 169, § 27, (R. L. c. 175, § 29,) a notice of the taking of a deposition must be served by an officer qualified to serve civil process or by a disinterested person.

When an instrument offered for probate as a will contains alterations, the burden of proof is on the proponent to show that the alterations were in the will when it was executed and that the testator knew they were there and intended to make them a part of his will.

Upon the evidence stated by the court it was *held,* that the jury were warranted in finding that the instrument here offered for probate, containing alterations, was

not executed by the testatrix with the intention of making the alterations a part of her will, and that the alterations were inserted in the will by fraud; *also*, that the answers of the jury upon the issues submitted to them expressed this finding.

APPEAL from a decree of the Probate Court for the County of Middlesex allowing the will of Martha E. Wyman, late of Chelmsford, upon a petition filed in that court on November 13, 1900.

Three issues were sent by a justice of this court to the Superior Court for trial, and were tried in that court before *Aiken*, J.

The following is a copy of the instrument allowed by the Probate Court as the will of Martha E. Wyman, the portions quoted in the findings of the jury being enclosed in brackets:

" Be it remembered, that I, Martha E. Wyman of Chelmsford in the County of Middlesex and Commonwealth of Massachusetts, being of sound mind and memory, but knowing the uncertainty of this life, do make this my last will and testament.

" After the payment of my just debts and funeral charges, I bequeath and devise as follows:

" To Lenore A. Dow of Waltham, Mass., the sum of five dollars.

" To Fernando A. Dow of Strong, Me., the sum of five dollars. Said Lenore A. Dow and Fernando A. Dow being my two sons and only children.

" To Bertha L. Nickless formerly Teabo all my dresses, clothes, jewelry and wearing apparel.

" To the City of Lowell a municipal corporation in said county the sum of one hundred dollars to pay for perpetual care of my lot in the Edson Cemetery in said Lowell and to be applied to no other purpose.

" I hereby order that my executors pay the sum of three hundred dollars for a proper monument to be erected on my said lot in said Edson Cemetery and I hereby devise and bequeath that sum for that purpose.

" To my brother William H. Webster of said Chelmsford all my real estate and the horse, cow, carriages, harnesses, wagons and all the personal property to be found on said real estate not otherwise disposed of. Said William H. Webster ~~and his heirs~~

may sell or dispose of said real and personal property as he sees fit [only so far as may be necessary for his support.]

" To my said brother William H. Webster eleven shares of stock in the Cooperative Store of said Lowell, Mass., whose place of business is now on Middlesex Street in said Lowell; Also Seven Shares of Stock of the Erie Telephone Company, having its place of business in said Lowell.

" To Miss Orena L. Webster of said Chelmsford all my silver spoons.

[" Said William H. Webster shall not sell any part of said property unless such sale is necessary for his support.]

" I hereby appoint Bernard D. O'Connell of New York city, but formerly of Lowell, Mass., to be the executor of this my last Will and testament.

[" To Saint John's Hospital a body corporate having its place of business in said Lowell I hereby devise and bequeath any and all remainder of my property and any remainder of property devised and bequeathed to said William H. Webster that may not be sold at the time of his death and I now limit the previous devise and bequest to said to said William H. Webster so that any and all remaining at the time of his death shall go to said Saint John's Hospital.

" The words ' and his heirs ' stricken out before signing; also ' to said.' The word ' Lowell ' inserted.]

" In testimony whereof, I hereunto set my hand, and in the presence of three witnesses declare this to be my last will, this thirtieth day of October in the year one thousand nine hundred.

Martha E. × Wyman.
<small>her mark</small>

" On this thirtieth day of October A. D. 1900. Martha E. Wyman of Chelmsford, Massachusetts, has signed the foregoing instrument by making her mark in our presence, declaring it to be her last will, and as witnesses thereof, we three do now, at her request, in her presence, and in the presence of each other, hereto subscribe our names. John Howland. William H. Shedd. Grace Carleton Shedd. Bernard D. O'Connell. Orrin Pierce."

The issues and the findings of the jury were as follows:

1. At the time of the execution of the will, was Martha E. Wyman a woman of sound and disposing mind and memory ?

The jury answer " Yes."

2. Was the making and execution of the instrument offered for probate secured by the fraud and undue influence of Bernard D. O'Connell, in part or in whole, and if in part, what part ?

The jury answer " Yes, in part."

" Only so far as may be necessary for his support." " Said William H. Webster shall not sell any part of such property, unless such sale is necessary for his support."

" To St. John's Hospital a body corporate, having its place of business in said Lowell, I hereby devise and bequeath, any and all remainder of my property, devised and bequeathed to William H. Webster that may not be sold at the time of his death, and I now limit the previous devise and bequest to said William H. Webster so that any, and all remaining at the time of his death go to said St. John's Hospital.

" The words ' and his heirs' stricken out before signing ; also ' to said' the word Lowell inserted."

3. Was the instrument offered for probate executed by Martha E. Wyman as and for her last will and testament?

The jury answer " Yes. With the exception of that portion claimed to be added by undue influence in answer to question two."

The petitioner, and the St. John's Hospital, named in the instrument as residuary legatee, alleged exceptions.

*H. P. Harriman,* for the petitioner.

*J. C. Burke & J. F. Corbett,* for the St. John's Hospital, residuary legatee, submitted a brief.

*M. M. Johnson,* for the contestants.

LORING, J.  This case is before us on exceptions taken at the trial of issues by a jury on an appeal from the allowance of a will by the Probate Court.  The will was attested by five witnesses, and among others by the petitioner O'Connell, who was named in the will as executor.  The testatrix was a widow sixty-nine years of age, who had been twice married.  In each of the first two clauses of the will a nominal sum is left to a son by her first husband ; the wearing apparel of the testatrix is then disposed of ; then provision is made for a monument at her grave and for the perpetual care of it ; the will, as it stood before any words were stricken out or interlined, provided that her brother, William H. Webster, and his heirs should have her farm and the personal property on it ; and after a further legacy to the same brother and a gift of silver spoons to another relation, comes a clause appointing the petitioner executor, and

after that a clause making St. John's Hospital a residuary legatee, including what was left of the property given to her brother undisposed of by him at his death. The words " and his heirs " were stricken out of the gift of the farm and the personal property on it, and by words written in after the will was first written, as is apparent from the way that they are crowded together, the brother was given a power of disposing of the farm and other property thus left to him for life, if necessary for his support.

The jury found on the second issue that the will was procured in part by fraud and undue influence of the petitioner, and specified as that part the words cutting down the gift to her brother to a life estate with a power of disposing of the principal for his support but only if necessary for his support, and the whole residuary gift to St. John's Hospital. In answer to the third issue, to wit: " Was the instrument offered for probate executed by Martha E. Wyman as and for her last will and testament ? " the jury answered " Yes. With the exception of that portion claimed to be added by undue influence in answer to question two."

The residuary legatee took part in the trial, and the exceptions before us were taken by it as well as by the petitioner. For convenience we shall speak of them as the exceptions of the petitioner, and shall speak of the arguments made by both as the arguments of the petitioner.

1. The first exception taken by the petitioner is to the ruling made by the presiding judge that all the attesting witnesses must be called by the petitioner. At the trial the four attesting witnesses other than the petitioner were called, and the petitioner then offered to rest, but the judge ruled that " the petitioner, being an attesting witness, must also testify." The petitioner was in court at the time.

The petitioner seeks to take this case out of the established rule that all the attesting witnesses to a will must be called, *Chase* v. *Lincoln,* 3 Mass. 236 ; *Howes* v. *Colburn,* 165 Mass. 385, on the ground that the statute of wills requires only three, and if three are called the statute is satisfied. But the provision of the statute is that the will shall be " attested and subscribed . . . by three or more competent witnesses." Pub. Sts. c. 127,

§ 1. Without deciding that if a testator elects to have a will attested by five in place of by three witnesses, all five become attesting witnesses and must be produced under the rule that all attesting witnesses must be called, it is enough to dispose of this case that the presiding judge in his discretion could require the proponent of the will to call O'Connell who was in court.

2. The second exception is to the ruling of the presiding judge that the attesting witness could be cross-examined on the whole case. The general rule that a witness in this Commonwealth can be cross-examined on the whole case is too well established to require discussion. *Blackington* v. *Johnson*, 126 Mass. 21. There is no difference in this respect between a witness who is called because he has attested an instrument and solely to testify as an attesting witness, and one called because he has otherwise acquired knowledge of material facts. *Beal* v. *Nichols*, 2 Gray, 262.

3. The next exception is to the admission in evidence of the record of the conviction of the petitioner for being accessory to the crime of bribery. The presiding judge, in admitting the record in evidence, said: " I shall instruct the jury that, as an attesting witness, present at the execution of the will and affixing his signature as a witness, the record introduced cannot affect his testimony as an attesting witness, and that the jury will in no way consider it on that aspect of the case and it is only admissible on other aspects of the case, when he testifies in other respects than as an attesting witness " ; and in charging the jury he repeated this instruction.

This is based on a misapprehension of the effect of R. L. c. 175, § 23. The exception provided for by that section was originally enacted as an exception to the act abolishing the rule that a witness was rendered incompetent if he had been convicted of a crime or had an interest in the litigation; St. 1851, c. 233, § 97; and the effect of the exception in that act and in the present law is to leave to the common law the competency of a witness to subscribe a will as an attesting witness; *Sparhawk* v. *Sparhawk*, 10 Allen, 155, 156 ; *Sullivan* v. *Sullivan,* 106 Mass. 474, 475 ; *Pease* v. *Allis*, 110 Mass. 157 ; *Hitchcock* v. *Shaw*, 160 Mass. 140, 141 ; and to leave to the statutes as to the competency of witnesses generally the question whether an at-

testing witness can give testimony on the stand. *Wyman* v. *Symmes*, 10 Allen, 153.

St. 1851, c. 233, § 97, abolishing the rule that witnesses who have been convicted of crime or have an interest are not competent witnesses was taken from St. 6 & 7 Vict. c. 85, § 1; see Hall's Mass. Practice Act, 194; and although the provision that the new rule should not apply to attesting witnesses to a will is substantially like the exception in the English act, the effect of the two is quite different. The exception in the English act is that the new rule shall not repeal the provisions of St. 7 Will. IV. & 1 Vict. c. 26, being an act for the amendment of the laws with respect to wills. That act provided in § 14 that if any person who shall attest the execution of a will shall at the time of execution thereof or at any time afterwards be incompetent to be admitted a witness to prove the execution thereof, such will shall not on that account be invalid. The effect of the exception in the English act was to leave this provision of the act as to wills unchanged, and the result was that if an attesting witness had an interest or had been convicted of an infamous crime, the will was good under St. 7 Will. IV. & 1 Vict. c. 26, § 14, and he could testify on the stand under St. 6 & 7 Vict. c. 85, § 1; while in Massachusetts, inasmuch as the provisions of St. 7 Will. IV. & 1 Vict. c. 26, § 14, have not been adopted, the will is invalid unless it is subscribed by three other attesting witnesses who are competent; but the attesting witness can testify on the stand.

A man convicted of an infamous crime is not a competent witness at common law; *Commonwealth* v. *Rogers*, 7 Met. 500; Wilde, J. in *Utley* v. *Merrick*, 11 Met. 302; and that is the rule under our statutes as to the competency of a witness to subscribe a will as an attesting witness. See *Sparhawk* v. *Sparhawk*, 10 Allen, 155, 157.

Bribery is punishable by imprisonment in the State prison, R. L. c. 210, § 6, and one who is accessory before the fact is punishable in the same way. R. L. c. 215, § 2. Being punishable in the State prison it is a felony, R. L. c. 215, § 1, and being a felony it is an infamous crime within the rule of the common law which renders a person convicted of an infamous crime incompetent to testify.

The conviction of the petitioner was not admissible to show that the petitioner was not competent to subscribe the will as an attesting witness. That fact was not involved in the three issues then on trial. But the conviction was admissible as affecting the credibility of the petitioner as a witness who had given testimony on the stand. The only exception taken was to the admission of the record in evidence. No exception was taken to the statement made by the judge at the time, and repeated in the charge to the jury. We do not mean to decide that if an exception had been taken to it it would have been sustained. The instruction was, under any construction, too favorable to the petitioner.

4. The next exception is to the identification of the petitioner as the Bernard D. O'Connell who was the respondent to the petition of Charles Cowley for his disbarment. This question followed the question whether he was the O'Connell convicted of being accessory to the crime of bribery. After these questions had been answered, the presiding judge admitted the record of the conviction of bribery, and excluded the record of the " latter," that is the record of the petition for disbarment. Until the petitioner had been identified as the O'Connell who was disbarred, the question of the admissibility of the record of his disbarment could not be raised, and no exception lies to the admission of the preliminary question asked to raise the question as to the admissibility of the record. The record of the disbarment of O'Connell was excluded.

If the petitioner thought that his interests were prejudiced by the admission of the question, his remedy was to ask to have the jury told why the question had been admitted, and instructed not to consider it in deciding the issues before them.

5. The objection taken to the statements made by the counsel for the respondents in his opening to the jury " that the petitioner had been found guilty of various offences and disbarred for them," was met by the ruling of the court that the case should be decided by the jury " on the evidence and not on the opening statement." It would seem from the bill of exceptions, that the statement was made after the ruling of the presiding judge that the record as to the petitioner's disbarment was not competent in evidence. If it was made then, it was highly im-

proper for the counsel for the respondents to state in his opening that the petitioner had been " disbarred " for various offences of which he had been found guilty, after the judge had ruled that the record of his disbarment was not competent evidence. But this impropriety on the part of counsel in his opening statement, if it occurred, does not as matter of law entitle the petitioner to a new trial. If the proponents wished for further instructions they should have asked for them. It does not appear that they did not do so, nor does it appear that such further instructions were not given. *Commonwealth* v. *Poisson*, 157 Mass. 510. The judge did all that could be done at the time. He was not bound to end the trial because these statements were made.

6. There is nothing in the exception to the statement of the respondents' counsel in opening that " he would prove a conspiracy between the petitioner and one Father McKenna, a Catholic priest, to get wills made favorably to them or to institutions in which they were interested, on a commission of fifty per cent, and that it was in carrying out this conspiracy that they got the bequest to St. John's Hospital in this will." The petitioner had no ground of exception to counsel's stating in his opening argument what he expected to prove.

7. The next two exceptions refer to the exclusion of two depositions. The first exception is to the admission of the testimony of the magistrate to control or explain his certificate, and the second is to the exclusion of the depositions themselves when offered in evidence. The magistrate stated in his certificate on the depositions " that he had caused a true and attested copy of the notice to be duly served on the attorneys of the respondents, and annexed the notice with the sworn return of the petitioner thereon." He was allowed to testify that the copy served on the defendants' attorney was a correct one, but it was copied, written, attested and served by the petitioner himself, and that no other notice was issued or served. The certificate of the magistrate is not conclusive of what the real fact is. *Minot* v. *Bridgewater*, 15 Mass. 492. For a similar decision in case of notice to take the poor debtor's oath, see *Baker* v. *Moffat*, 7 Cush. 259 ; *Young* v. *Capen*, 7 Met. 287.

We are of opinion that service of a written notice of the time

and place of taking a deposition must be made by an officer qualified to serve civil process, or by a disinterested person. In the original act providing for the taking of depositions it is provided : " Such service being proved by the affidavit of a disinterested witness, or by the return on said notification of the sheriff or his deputy of the county, or of the constable of the town where the said adverse party or his attorney shall live, shall be deemed sufficient notice." In the Commissioners' Report of the Revised Statutes, the wording of the provision is abbreviated and is as follows : " The notice shall be served by any officer qualified to serve any civil process, or by any disinterested person " ; Commissioners' Report, c. 94, § 20 ; and in the Revised Statutes as enacted it is : " The notice shall be served," etc. Rev. Sts. c. 94, § 18. The wording of the section has since then remained unchanged. Gen. Sts. c. 131, § 21. Pub. Sts. c. 169, § 27. R. L. c. 175, § 29. In our opinion, the change in the wording adopted in the Revised Statutes was adopted for the sake of brevity and not for the purpose of changing the law. And this is borne out by the rule as to the service of a subpœna on a witness. The statutory provision that a subpœna to a witness may be served by a disinterested person was first introduced in the Report of the Commissioners on the Revised Statutes, and from the notes of the commissioners this purports to be an enactment of the practice which then obtained at common law. Commissioners' Report, c. 94, § 4, and notes to whole chapter. The notice in question is addressed to the party and not to a constable or sheriff, (see notes to Pub. Sts. c. 169, § 25,) and in that respect resembles a subpœna to a witness. It is not like a notice by one party to the other party to a cause ; it is a notice issued by a magistrate appointing the time and place for taking a part of the evidence in the cause, and by the provisions of the statute now in force, (R. L. c. 175, § 29,) it is to be " served." In our opinion, looking to the history of the enactment and to the reason of the matter, the notice must be served by an officer qualified to serve civil process or by a disinterested person.

We have found no case to the contrary. In *Colton* v. *Rupert,* 60 Mich. 318, relied on by the petitioner, the notice given of taking the deposition was signed by the attorney for the defendant. But the statute there in question authorized notice of

taking a deposition to be given by the party "without any such direct agency of such justice." How. Ann. Sts. (1882) § 7461. In *Cutler* v. *Maher*, 41 Maine, 599, it was held that the attorney of one of the parties could issue the notice to take the deposition returnable before another magistrate, and in this respect that case resembles the practice which obtains here of a justice of the peace who is an attorney in the cause issuing subpœnas for the attendance of witnesses.

8. The remaining matters to be considered are the exceptions to the refusal to rule that there was no evidence which would warrant a finding on the second issue and to the exception to the order overruling the motion to set aside the answer to the second issue as being inconsistent with the answer made by the jury on the third issue.

We are of opinion that there was evidence warranting a finding that the residuary gift to St. John's Hospital and the other alterations specified in the answer to the second and third issues were introduced into the will through the fraud of O'Connell.

It is plain from an inspection of the will that it is written throughout by O'Connell. It is necessary only to compare the writing in the body of the will with O'Connell's signature as one of the attesting witnesses, to be convinced of that. It is also plain on the face of the will that, if it had stopped with the clause nominating O'Connell executor, the will would have been a complete will, and would have disposed of all the property of the testatrix unless there was property in addition to that specified in the will, and there is no evidence stated in the bill of exceptions that there was. Finally, the residuary gift to the hospital cannot be taken alone but must be taken with the erasures and interlineations which evidently were made to render the gift to the hospital valid. It is of some significance in this connection that, by reason of the more crowded and smaller writing used in the residuary clause, there was evidence from which the jury could have found that this clause was not written at the same time that the rest of the will was written. The case presented in this will therefore is the case of a will containing alterations.

It was said by this court in *Wilton* v. *Humphreys*, 176 Mass. 253, 257: " There is no presumption of law in a case of this

kind as to the time when the disputed words were written. The question is one of fact to be determined on all the evidence. *Ely* v. *Ely*, 6 Gray, 439. The burden of proof is on a party presenting a will to show that alterations or interlineations in it were made before its execution, and unless there is something in the nature of them, as applied to other parts of the writing, or unless there is other evidence to show that they were a part of the will when it was executed, they will be rejected for want of proof." And again, " The validity of changed portions is not assumed, but there may be evidence to establish it; and this evidence may be found in the instrument itself, or may come from outside of it."

The burden of proving that the testatrix knew what the instrument she executed contained, and that she intended to make it and the whole of it her will, is on the person producing the will for probate. See in this connection Field, J. in *Worthington* v. *Klemm*, 144 Mass. 167. It follows from this and what is laid down in *Wilton* v. *Humphreys* as to the burden of proof that the burden is on the proponent to prove that the alterations were in the will when it was executed, that the testatrix knew they were there and intended to make them a part of her will. For cases where wills have been admitted to probate without certain parts which appeared to be alterations, for lack of evidence that the testator knew of the alterations, or because it appeared in evidence that he did not know of them, see *In the Goods of Duane*, 2 Sw. & Tr. 590; *Morrell* v. *Morrell*, L. R. 7 P. D. 68; *In the Goods of Wray*, 10 Ir. Eq. 266; *In the Goods of Boehm*, [1891] P. 247; *Rhodes* v. *Rhodes*, 7 App. Cas. 192.

In the case at bar there was evidence of the following facts: The testatrix was a widow sixty-nine years of age, who lived on her farm with a brother, W. H. Webster, to whom the farm was left by the will for life or in fee. She had been twice married, and had two sons by her first husband, — the respondents Lenoir and Ferdinand Dow, to each of whom a nominal sum was left in the first two clauses of the will. The testatrix was a spiritualist in belief. She had made two previous wills, in each of which her brother was given the income of all her property for life; the residue was given to the First Spiritualist Society in the first will, and in the second will to the Old Ladies' Home of

Lowell. The will in question was drawn at the house of the testatrix on the day it was executed, October 30, 1900, and the testatrix died nine days after, on November 9, of the same year. The will was executed by the testatrix by making her mark, for some reason not stated in the bill of exceptions.

The only explanation given as to the alterations was given by O'Connell. The testimony of the attesting witnesses did not touch on the question as to how the alterations came to be in the will, or whether the testatrix knew that they were there when she executed it. All that there is in the bill of exceptions as to their testimony is: "From their testimony there was evidence tending to show that the testatrix was of sound mind on October 30, 1900, when the will was executed; that the instrument was duly executed according to law; and that the alterations and interlineations in the will were made before the same was executed."

In addition to the explanation given by O'Connell which, if believed, made out the petitioner's case, the material evidence was as follows: St. John's Hospital is managed by Roman Catholic Sisters of Charity, and the testatrix had a cancer removed there in 1898 and had been there for a second operation in the July preceding her death. There was evidence on the one hand that she had always spoken kindly of the hospital and of her treatment there, and on the other hand that she had once remarked, when speaking of her treatment, that "she paid for it"; that she "left the hospital because she lacked funds"; that she said of the hospital and the sisters at the hospital, "they were the damndest beggars she ever saw and were intimating all the time that if they had money they could do so and so, but she was too old to take hints"; and that she "sometimes spoke slurringly of the Catholics." It appeared that O'Connell was a Catholic.

O'Connell's credibility was attacked by proving that he had been convicted of the crime of being accessory to bribery. The jury had a right to disbelieve his testimony.

Apart from O'Connell's testimony, although it is plain that the testatrix executed the instrument, the jury were not bound to find that the alterations were known to the testatrix to be there or that she intended that they should be there, or that she

executed the instrument with that knowledge and intention. If they were there without her knowledge and O'Connell got her to sign or allowed her to sign the instrument under those circumstances, they were introduced into the will through his fraud, and the case comes within the class of cases where words are introduced into a will through fraud, accident or mistake, and the instrument is executed in ignorance of their presence; in such a case the words so introduced into the will are not admitted to probate. See *In the Goods of Duane,* 2 Sw. & Tr. 590; *In the Goods of Oswald,* L. R. 3 P. & D. 162; *Morrell* v. *Morrell,* L. R. 7 P. D. 68; *In the Goods of Boehm,* [1891] P. 247; *Rhodes* v. *Rhodes,* 7 App. Cas. 192, 198; *In the Goods of Wray,* 10 Ir. Eq. 266.

Fraud consisting in slipping words into a will unknown to the testator and allowing him to execute the instrument in ignorance of their being there, is put in issue by the third issue in the case at bar, which is like the third issue in *Barker* v. *Comins,* 110 Mass. 477. The fraud in question in the second issue is inducing a testator by false and fraudulent representations to execute an instrument as his will knowing what the instrument contains. And that kind of a fraud does not arise until the jury have found that the testator did execute the instrument as and for his last will, knowing what the instrument contained.

By their answer to the third issue, it is evident that the jury found that the testatrix did not execute the instrument intending to make the alterations a part of her will; in other words, that the alterations in question were inserted in the will by fraud. In the absence from the bill of exceptions of the charge of the presiding judge to the jury, we do not think that we can say that the answer to the second issue involves anything more than a reaffirmation of that fraud. For this reason, the residuary legatee and the executor have not shown that there was error in the order overruling the motion to set aside the answer to the second issue as inconsistent with the answer to the third issue. The exception to the refusal to rule that there is no evidence warranting a finding in favor of the contestants on the second issue is made immaterial by the answer to the third issue.

*Exceptions overruled.*