OLD COLONY TRUST COMPANY, executor, *vs.* JAMES W. BAILEY.

Middlesex.    March 16, 17, 1909. — May 22, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Probate Court,* Jurisdiction, Parties, Issues to jury, Conduct of trial.  *Practice, Civil,* Exceptions.  *Will,* Validity.  *Fraud.  Undue Influence.*

*It seems* that, if a part of a will is procured by undue influence and the rest of it is not, the Probate Court has jurisdiction to reject the part improperly procured, and to admit the residue to probate.

On an appeal from a decree of the Probate Court allowing a will, two issues for the jury were framed, the first, whether the will was procured to be executed by undue influence of one W., and the second, whether it was procured to be executed in whole or in part by undue influence of W., " and if in part, what part." At the trial there was evidence tending to show that certain bequests were so procured, and there was no evidence tending to show that other bequests, in which W. had no interest, were so procured. Both issues were submitted to the jury. W. alleged an exception to the submission to the jury of the second issue. *Held,* that the second issue properly was submitted to the jury.

An exception to an inaccurate statement, contained in a single sentence in a long charge of a judge to a jury, will not be sustained if it appears that the inaccu-

racy was cured in what was said in the charge both before and after the sentence objected to.

While, at the trial of an appeal from a decree of the Probate Court allowing a will, an individual beneficiary under the will is not entitled to participate separately as of right, it nevertheless is within the discretion of the presiding justice to allow him to do so if it appears that there are contentions that ought to be made in support of the will that are adverse to other contentions that ought to be made in support of those parts of the will which affect such beneficiary.

A judge cannot be required to select a part of the testimony given at a trial and bearing on a certain question and to suggest to the jury in his charge what effect it may have by itself alone in some possible view that the jury may take of it.

APPEAL from a decree of the Probate Court for the county of Middlesex, allowing the will of Martha E. Bailey of Newton.

After the proceedings which are stated in the opinion, the following two issues were tried before *Braley*, J.: (1) "Was said instrument propounded for probate as the last will and testament of Martha E. Bailey procured to be executed by the undue influence of Frederick W. Webber?" and (2) "Was the instrument propounded for probate as the last will and testament of Martha E. Bailey procured to be executed in whole or in part by the undue influence of Frederick W. Webber, and if in part, what part?"

The will contained eighteen items. Of these, the first, fourth, fifth, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth and fifteenth items were directions for specific bequests and legacies to persons and charitable organizations not parties to this proceeding, almost all of the individuals so named being close friends or relatives of the testatrix, and none of the charitable organizations having been suggested by Dr. Webber. The second item related to the care of a family burial lot. The third devised to James Warren Bailey, the appellant, the testatrix's interest in the "homestead place" and certain personal property. The sixteenth item devised certain real estate to the trustee under the will to pay the net income to the appellant during his life, and then to convey the land to three charitable organizations, one of which was the Boston Home for Incurables. The seventeenth item devised and bequeathed the residue of the estate to the trustee, to pay the net income thereof to the appellant during his life, and after his death on the happening of various contingencies, to various beneficiaries, of whom Fred-

erick W. Webber and the Boston Home for Incurables were two. The eleventh item gave to "my friend and physician Doctor Frederick W. Webber" "nine of my shares of Calumet and Hecla stock, and my circlet diamond ring of three stones to be used as a scarf ring." The eighteenth item appointed the executor and trustee.

Chester B. Humphrey, Esquire, an attorney in the employ of the Old Colony Trust Company, the executor and trustee named in the will, testified that the testatrix unaccompanied came to him in April, 1906, with memoranda for a will, and that they had some conversation on the basis of which he made a draft of a will for her and sent it to her. In this first draft, Dr. Webber was given twelve shares of Calumet and Hecla stock, instead of nine shares as in the final draft. Other provisions were practically the same, except that the trust as to real estate, which appeared in item sixteen of the will as finally executed, was not then provided for. This was added on May 21, 1906. On June 27, a provision was dictated providing for a small annuity to Dr. Webber. This was not in the will as executed. The will was executed on July 18, 1906.

Frederick W. Webber testified that he was a practising physician and had known the testatrix since 1902, and thereafter attended her continuously up to the time of her death, no other physician attending her during that period. The testatrix first spoke to him with regard to her making a will in the spring of 1905, asking him to act as executor. He refused. She brought the matter up repeatedly, and finally he suggested that she go to the Old Colony Trust Company. She told him from the beginning not to let her brother know of the will. He looked up for her the names of three charities. She did not make a bequest or give a legacy to any of them. He, the witness, never saw a draft of the will and did not know that there was to be a legacy for him, except as to a diamond ring. In June, 1907, he read the will for the first time. He knew that the testatrix had written out certain memoranda, which he had seen, for use in making her will.

Dr. Webber also testified of complaints by the testatrix to him as to the treatment of her by her brother, the appellant, of statements by the executrix that the appellant had used violence upon

her, and of marks of violence which he, the witness, had found upon the person of the testatrix, and which she had told him were caused by the appellant.

Dr. Webber also testified that in September, 1906, the testatrix left the house where she had been living with her brother and went to board with a lifelong friend, where she remained until she died on August 13, 1907. In the meantime, because of her inability owing to illness to attend to her business affairs personally, Dr. Webber had been attending to the affairs of the testatrix for her. A brokerage firm objecting to recognizing certain signatures made by her mark, Dr. Webber and others suggested that she execute a trust deed. She asked him to act as trustee and he repeatedly refused, but finally, after she had refused to accept various men of well known standing as trustee, he consented, and, with the advice and assistance of her own counsel, a trust deed was executed on March 6, 1907. The deed in substance placed all the property of the testatrix in the control of the trustee for management, for payment to the testatrix or her order of the net income, and for disposition after her death according to the directions of her will or according to law if she died intestate.

Dr. Webber also testified that during April, 1906, he made seven professional visits upon the testatrix; during May, 1906, ten; during June, 1906, five and, previous to July 18 in July, 1906, three. In January, February and March, 1907, he visited her almost daily. He testified that such visits always were necessary for her proper treatment, and that his bills all were paid promptly excepting those covering a short period before the death of the testatrix.

There was other evidence both in confirmation of and in contravention of the foregoing testimony of Dr. Webber.

At the close of the evidence, the presiding justice permitted counsel for the Boston Home for Incurables and for Frederick W. Webber to address the jury; and the appellant excepted.

The appellant requested the following rulings among others:

"12. If the jury find that Dr. Webber did exercise undue influence over the testatrix in the matter of the making of her will, it does not necessarily follow because she made some bequests and legacies to her distant relatives and friends and to charities

that such bequests and legacies are valid, and that as to these bequests she was free from such influence, for the jury might also find that this was a part of his scheme to cover his own wrongdoing and make this will as a whole seem just and reasonable.

" 13. If the jury find that Dr. Webber did exercise undue influence over the testatrix in the matter of the making of her will, and that in doing so his only interest was in his own legacy, yet if you find that in making the other bequests and legacies to her distant relatives and friends and to charities she was influenced by him with the intent on his part to make his own legacy seem more reasonable, such other bequests and legacies must be found to be likewise affected by his undue influence and cannot stand."

Counsel for Dr. Webber requested that the following ruling be given:

" The instrument executed by Martha Ella Bailey July 18, 1906, in the presence of three attesting witnesses, having been proved to be an act apparently deliberate, and executed with all usual and legal formalities by a competent person, is to be accepted and allowed as her last will and testament, unless the party seeking to avoid and destroy it prove that an influence was exercised over the testatrix by Frederick W. Webber at the time, which constrained her to do that which was contrary to her will and desire, but which she was unable to refuse to do."

At the close of the charge, the presiding justice stated: " I have been asked by various counsel in this case to give certain instructions, and in so far as I have not covered or given them in the instructions to the jury, I save their several exceptions."

The findings of the jury upon the issues are stated in the opinion. The appellant and Frederick W. Webber alleged exceptions.

Other facts are stated in the opinion.

*W. A. Morse*, (*F. J. Geogan* with him,) for the appellant, James W. Bailey.

*R. W. Bartlett*, for Frederick W. Webber.

*E. H. Warren*, for the Boston Home for Incurables.

*F. N. Wier*, (*W. A. Rollins* with him,) for the executor.

KNOWLTON, C. J.   This is an appeal from a decree of the Probate Court, allowing the will of Martha E. Bailey, deceased. After a verdict upon an issue framed for a jury had been set aside as against the evidence, an additional issue was framed, numbered two, which, as afterwards amended and submitted to the jury, was as follows : " Was the instrument propounded for probate as the last will and testament of Martha E. Bailey procured to be executed in whole or in part by the undue influence of Frederick W. Webber, and if in part, what part?" To this issue the jury subsequently answered, " Yes, that all the bequests made in favor of Dr. Frederick W. Webber, mentioned in clauses number eleven, number sixteen and number seventeen be stricken from the will of Martha E. Bailey." The first issue, as to whether the whole will was procured by undue influence, they answered in the negative.

The second issue was framed because the first trial suggested the question whether a part of the will might not have been procured by undue influence, while the larger part of it was a valid expression of the desire of the testatrix. Dr. Webber, referred to in the issue, and the Boston Home for Incurables, another legatee named in the will, as well as the executor and the appellant, were heard by the justice on the framing of this issue, and there was no appeal from the order, and no exception was taken. It having been intimated subsequently, at the trial before another justice, that only the executor and appellant had any standing to be heard as parties, and up to this time no request having been made by others to participate in the trial, the counsel for Dr. Webber, while Dr. Webber was under cross-examination as a witness, claimed a right in his behalf to take a part in the trial. At first his claim was refused, and he took an exception. But very quickly, before the examination of Dr. Webber had proceeded much further, the justice told him that he might participate in the trial as fully as he pleased, and might argue the case to the jury if he desired. Thereafter he took part in the trial so far as he desired, and argued the case to the jury. He did not request the recall of any witness.

At the conclusion of the contestant's testimony, and again at the conclusion of all the evidence, he asked the justice to withdraw the second issue from the jury, on the ground that no

testimony had been offered to prove that any particular part of the will had been procured by the fraud or undue influence of Frederick W. Webber, and that the testimony had been offered to prove that the whole will had been so procured. This request was not founded on any contention that the issue was not properly framed originally, or that, upon proper evidence, the will might not be found to be procured by fraud in part and to be good in other parts. That this may be so found seems to be generally held by the courts, although it has never been distinctly decided in this Commonwealth. *Trimlestown* v. *D'Alton*, 1 Dow & Cl. 85. *Allen* v. *M'Pherson*, 1 H. L. Cas. 191, 209. *Harrison's Appeal*, 48 Conn. 202. *Rockwell's Appeal*, 54 Conn. 119. *Morris* v. *Stokes*, 21 Ga. 552. *Eastis* v. *Montgomery*, 93 Ala. 293, 299. *Steadman* v. *Steadman*, 10 Sad. (Penn.) 539. See Wms. Ex. (10th ed.) 291. 1 Jarm. Wills, (6th ed.) 37. Woerner, Law of Administration, (2d ed.) § 222. Decisions in this State assume or imply that this is the law. *O'Connell* v. *Dow*, 182 Mass. 541, 552. *Ogden* v. *Greenleaf*, 143 Mass. 349. Wills have been proved in this Commonwealth to take effect in part and to be void in part. *Deane* v. *Littlefield*, 1 Pick. 239. *Holman* v. *Perry*, 4 Met. 492. *Heath* v. *Withington*, 6 Cush. 497.

Considered in reference to the evidence to which it was directed, this request was without foundation. There was evidence in the circumstances to indicate that the other bequests contained nothing to lead to the belief that Dr. Webber prompted them. This request was rightly refused.

The request to instruct the jury that the party seeking to set aside this will on the ground of undue influence must prove that an influence was exercised " which constrained her (the testatrix) to do that which was contrary to her will and desire, but which she was unable to refuse to do," was fully covered by the language of the charge.

Dr. Webber's counsel excepted to this part of the charge : " If you should find as you have listened to this evidence, that the getting of the trust deed was simply another act of undue influence, that is not the question at all. It is whether or not her condition of mind when she gave that trust deed to him, and because she gave it, is evidence tending to show a like condition

of mind when she made the will. That is to say, having once got control of her mind, was it a permanent condition? " The sentence at the end of this quotation evidently was not an accurate expression of what was in the justice's mind. The will was made before the testatrix made the trust deed to Dr. Webber. But the subject was afterwards discussed at length by the justice, this part of the charge covering nearly two printed quarto pages, and with such general clearness of expression as to show that the jury could not have misunderstood the proper application of this evidence. The inaccuracy of expression in a single sentence was cured by what was said before and afterwards. The exceptions of Dr. Webber are overruled.

The appellant filed a bill of exceptions on another ground. He contended that it was an error in law to permit Dr. Webber and the Boston Home for Incurables to participate in the trial, and he excepted to the order of the presiding justice allowing it.

It is true, as the appellant contends, that a petition for the probate of a will is a proceeding *in rem.* *Bonnemort* v. *Gill*, 167 Mass. 338. *McKenna* v. *McArdle*, 191 Mass. 96. It is also true, as a general rule, that the interests of legatees claiming under a will are properly and sufficiently represented by the executor, and, notwithstanding the dictum to the contrary in *Eliot* v. *Eliot*, 10 Allen, 357, 359, individual legatees are not entitled as of right to appear separately and become parties to a petition for the probate of a will. The representation of the estate and the conduct of the trial usually should be left to the executor. But if it appears that one legatee has important interests adverse to those of the legatees generally, or if for any reason, under the issues submitted to the jury, there are contentions that ought to be made in support of the will which are adverse to other contentions that ought to be made in support of some part of the will, it is in the discretion of the presiding justice to allow parties differently interested to appear and be heard in support of their respective contentions. In the present case the two issues presented such conditions. The executor was willing that these two legatees, whose interests were to a certain extent antagonistic, should be heard in support of their respective views. Indeed, in this court the executor's counsel was so far in doubt

as to what action he should take as between the adverse conten-
tions of these two legatees in regard to the substantive matters
in dispute between them, that he presented no argument in re-
gard to them.   While we are of opinion that, as a rule, indi-
vidual legatees should not be permitted to be heard in behalf of
their personal interests in a proceeding of this kind, we think
that, in the present case, the discretion of the court was wisely
exercised.   See *O' Connell* v. *Dow*, 182 Mass. 541.   This excep-
tion must be overruled.

The only other exception of the appellant is to the refusal of
the presiding justice to give the twelfth and thirteenth rulings
requested by the appellant.   The first of these called for an in-
struction to the jury as to the effect that might be given to a
part of the evidence, in reference to a possible view that might
be taken of it in its bearing upon the general question to which
it related.   It has often been decided that a judge cannot be re-
quired to select a part of the testimony bearing upon a question,
and to suggest what effect it may have, by itself alone, in some
possible view that the jury may take of it.   *Shaw* v. *Tompson*,
105 Mass. 345, 350.   *Delaney* v. *Hall*, 130 Mass. 524.   *Bugbee*
v. *Kendricken*, 132 Mass. 340.   *Hicks* v. *New York, New Haven,
& Hartford Railroad*, 164 Mass. 424, 428.   *Henderson* v. *Ray-
mond Syndicate*, 183 Mass. 443, 447.   *Lakeside Manuf. Co.* v.
*Worcester*, 186 Mass. 552, 559.   The thirteenth request was
given in substance, although not in the same language, in the
charge.

*Exceptions overruled.*