GEORGE R. BLINN, executor, *vs.* SAMUEL H. PILLSBURY, special administrator, & another.

Suffolk.   January 19, 1925. — April 18, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & WAIT, JJ.

*Probate Court*, Party interested, Jury issues.

A husband died after his wife, and a special administrator of his estate, appointed pending a controversy as to the allowance of his will, was allowed by the Probate Court to appear to contest the allowance of an alleged will of the wife and to file a motion for jury issues, which was allowed.   It appeared that in the wife's possession at the time of her death were valuable securities which the husband had claimed were his and which the special administrator of his estate was seeking to recover in a suit in equity.   Unless the suit was successful, the estate of the husband was insolvent.   If the wife's will was disallowed, the husband's estate would be sole beneficiary by inheritance.   A motion by a cousin and sole heir at law of the husband, who was opposing the allowance of his will, for jury issues in the matter of the petition for allowance of the will of the wife, was disallowed, the judge ruling that the interests of all who might share in the estate of the husband were fully represented by the special administrator.   The heir of the husband appealed. *Held*, that

(1) It was discretionary with the court whether the heir of the husband should be permitted to participate in the proceedings as to the will of the wife;

(2) The record did not show any abuse of discretion in the disallowance of the motion of the heir of the husband.

A motion by the special administrator of the estate of the husband for jury issues as to the validity of an alleged will of his wife, presenting questions as to the soundness of mind of the testatrix and whether her will was procured to be executed by undue influence, properly was allowed upon offers by counsel to prove that at the time when the will was executed, which was seven days before her death, the wife was enfeebled by disease and had been estranged from her husband, who previously had given her valuable real estate and personal property, and that she had come under the domination and fear of one who was not related to her, whom she referred to in her will as an employee, therein made her major beneficiary and in conversations designated as her brother.

The issue as to the undue influence, allowed in the circumstances above described, was in the following form: "Was the instrument propounded for probate as the last will of said . . . [alleged testatrix] procured to be made through fraud or undue influence of . . . [the employee]?" The will named many beneficiaries besides the employee, many of whom were charitable institutions. *Held*, that this issue should be modified to read, "Was the will propounded for probate as the last will of said . . . [alleged testatrix] procured to be made in whole or in part by the fraud or undue influence of . . . [the employee] exercised upon the said . . . [testatrix], and if in part, what part?"

PETITION, filed in the Probate Court for the county of Suffolk on April 10, 1924, for the proof of the will of Lucinda E. Shaw, late of Boston.

Effie P. Lighthipe, cousin and sole next of kin of Charles N. Shaw, entered an appearance to contest the will.

A petition by Samuel H. Pillsbury, special administrator of Charles N. Shaw, husband of Lucinda E. Shaw, who died after her and the allowance of whose will was being contested, seeking to be permitted to contest the proof of the will of Lucinda E. Shaw, was allowed by *Prest*, J.

Motions by Effie P. Lighthipe and by the special administrator of the estate of Charles N. Shaw for the framing of jury issues were heard by *Dolan*, J., a stenographer having been appointed under G. L. c. 215, § 18, to take the evidence.

The motion by Effie P. Lighthipe was denied, the judge ruling as follows: "The right of the husband of the deceased Mrs. Shaw to contest her will passed upon his death to his personal representative; his heirs cannot insist as a matter of right on being heard in opposition to Mrs. Shaw's will. Assuming that in certain circumstances, as for instance where there was reason to believe that the personal repre-

sentative of the deceased person might not be vigilant in the interests of those who might ultimately be entitled to the estate which he represents, the court could in its discretion permit one who might be so entitled to appear and contest, no such situation exists in this case. There is no suggestion that the representative of the estate of the deceased Charles N. Shaw will not earnestly prosecute the objections to the probating of the will of Mrs. Shaw and no facts are presented to warrant such a conclusion. The interests of all who may share in the estate of Charles N. Shaw are fully represented by the special administrator of his estate who is authorized by statute to maintain such actions as may be necessary to protect the interests of the deceased Charles N. Shaw and of those claiming under him." Effie P. Lighthipe appealed from the disallowance of her motion.

The motion by the special administrator of the estate of Charles N. Shaw was allowed, and the following issues were ordered tried by jury:

"Was said Lucinda E. Shaw of sound mind at the time of the execution of the instrument which is now propounded as her last will?

"Was the instrument propounded for probate as the last will of said Lucinda E. Shaw procured to be made by the fraud or undue influence of Albert W. Myer exercised upon the said Lucinda E. Shaw?"

The petitioner appealed from the allowance of the motion of said special administrator.

*H. R. Bailey*, for Effie P. Lighthipe.

*R. E. Goodwin*, for S. H. Pillsbury, special administrator.

*A. L. Taylor*, for the petitioner.

BRALEY, J. Lucinda E. Shaw, the wife of Charles N. Shaw, died December 25, 1923, without surviving issue, leaving a will dated December 17, 1923, in which the petitioner is named as executor. Her husband died March 5, 1924, also leaving a will, the admission of which to probate is contested. *Angell* v. *Lighthipe*, 251 Mass. 525. The petition for the establishment of the wife's will was not filed until after her husband's death, when, the respondents having appeared to oppose its allowance, a special administrator

was appointed. The inventory filed by him shows personal property of the value of $413,236.68, of which amount Charles N. Shaw claimed to be entitled to $270,291.33, the appraised value of certain stocks and bonds which were his own property wrongfully appropriated by his wife. A suit in equity has been brought to recover this property, which is still pending, and, unless it is successful, and the securities are surrendered, his estate, of which the respondent Pillsbury is the special administrator, is insolvent. Her real property was valued at $103,000, and if she had died intestate Charles N. Shaw would have inherited her entire estate. G. L. c. 190, § 1. *Yerxa* v. *Youngman*, 241 Mass. 251, 254. If living, he could have contested her will, and, having been so authorized by decree of the court of probate, the parties do not question the right of the special administrator to appear as a contestant. G. L. c. 193, §§ 11, 12. *Purcell* v. *Purcell*, 233 Mass. 62, 64.

The respondent Lighthipe, however, the sole heir at law of Charles N. Shaw, contends, that, being a party interested, she should be permitted to join. But the management and conduct of the trial should usually be left in the control of the duly appointed representatives of the estate. If it appears that by reason of conflicting interests one legatee has an interest adverse to another legatee, or if, under the issues as framed, contentions in support of the will are adverse to other contentions that also tend to support a part of it, the court in its discretion may allow parties differently interested to present their respective contentions, or if the special administrator proves incompetent or becomes disqualified he can be removed, or a coadministrator can be appointed. *Old Colony Trust Co.* v. *Bailey*, 202 Mass. 283, 290. The respondent Lighthipe was not entitled as of right to participate in the proceedings, and under the rule just stated the disallowance of her petition for issues to a jury presents no question of law. It was discretionary whether the petition should be granted. The dictum to the contrary in *Eliot* v. *Eliot*, 10 Allen, 357, 359, was not followed in *Old Colony Trust Co.* v. *Bailey, supra.*

But, the court on the special administrator's petition

having ordered the following issues for trial by jury, "Was the said Lucinda E. Shaw at the time of the execution of said alleged will of sound mind?" "Was the execution of said alleged will of said Lucinda E. Shaw procured through the fraud or undue influence of Albert W. Myer?" the petitioner appealed to this court. It is his contention that the order should be reversed. G. L. c. 215, §§ 9, 16, 28. The court appointed a stenographer under § 18, referred to in the record as a commissioner to take evidence. But the case was submitted and is before us on conflicting offers of proof. The question is, whether, treating the offers of proof as statements of expected proof, there was evidence on which the issues could be granted by the judge in the exercise of his discretion. *Cook* v. *Mosher*, 243 Mass. 149, 152.

The material facts on which the contestant relied were as follows: The testatrix married Charles N. Shaw May 3, 1887, and died December 25, 1923, in the fifty-ninth year of her age. The only issue of the marriage was a child born in early married life, but who died in infancy. During succeeding years Shaw, under the name of Page & Shaw, was a manufacturer of candy, from which business he received a very large income. While the firm in 1912 was incorporated under the name of Page & Shaw, Incorporated, he continued in control of the corporation, and at his direction a certificate for "five hundred shares of the seven per cent preferred stock" was issued to Lucinda Ellen Shaw, and so remained at her death. But most of the common stock was issued to, and was the property of Shaw until he sold it in December, 1917, or January, 1918, for a very large sum of money. He also purchased and had conveyed to his wife residential and other real property amounting in value to "at least $103,000," of which she died seised. Within two years after marriage they rented a safe deposit box in their joint names, to which each had a key and the right of access without the presence of the other. Shaw purchased and deposited from time to time investment securities of a high grade amounting to $270,000. There were also gold coin and bank bills which he had placed in the box aggregating $10,000, and every item of personal property standing in the

name of Mrs. Shaw, who had no known blood relatives or next of kin had been deposited by her husband. Shaw however had a cousin from whom he eventually became estranged. By mutual agreement cross wills had been duly executed, each spouse giving to the survivor all of his or her property, and these wills were also kept in the box. In 1908 Mrs. Shaw, notwithstanding his objections, went to the city of New York for the purpose of opening and managing a retail candy store under the name of "Page & Shaw," and while there she became very friendly with Albert W. Myer one of the beneficiaries named in her will. Upon Shaw's insistence, and on his payment to her of $18,000, she returned to Boston about 1912 accompanied by Myer, and from that time until her death eleven years later she lived with him either at the residence which Shaw in that year bought and placed in her name, or at a summer home in Maine purchased with his money, which she also owned. The relations between husband and wife had been moderately friendly, but after Myer came they became greatly strained. Shaw retained his legal domicil at the house where he had a room, but did not make it his home, because "there could not be two masters in the one house." He paid however all the expenses, and was generous in the amount of money which he gave for her personal use, as well as in presents of jewelry, furs and clothing. As time went on Myer's hostility deepened and his attitude became so pronounced that he refused Shaw admission to the house, and in an argument over the exclusion, Mrs. Shaw supported Myer. A further rehearsal of their marital relations during 1920 and 1921 would only show occasional and unimportant meetings. Mrs. Shaw in 1922, breaking a family custom of many years, refused to have the annual Thanksgiving and Christmas dinner with Mr. Shaw, and in April, 1923, she caused a formal notice to be served on him to quit another house to which he had previously removed when he left the home occupied by her and Myer, title to which also stood in her name, and from that time all direct communication between them ceased. The testatrix continued to live with Myer to whom she referred as her brother, and during the last twelve months

she saw her friends very infrequently owing to his influence. She did however in 1923 arrange for a secret interview with an old family friend. In the course of the conversation she said that she "was in deadly fear of Albert W. Myer who had caused her to break away from the . . . faith which she had embraced in early life, and that she was completely under his dominance and control, . . . [and] did not dare to go to the church of her choice openly because of her fear of . . . Myer and because of his domination over her mind and her will."

Beginning in 1920, Mrs. Shaw's mental condition was manifested in several ways. She exhibited violent outbreaks of uncontrollable rage, used profane and obscene language without apparent provocation. She also suffered from an incurable internal disease, causing her intense pain, and at times uncontrollable physical agony. On December 6, 1923, although very ill, weak, in a shaking condition, scarcely able to walk, she rode without the knowledge of Shaw to the vault, and removed the will previously made in favor of her husband, and securities of the value of $270,000, as well as the bank bills and gold coin, and after hiring another box in her own name in which the securities and moneys were redeposited, she took her own will and departed. On the day following her visit she sent for counsel whom she never had previously consulted, and informed him that she desired to make a will. The instrument now in question was finally drafted and signed seven days before her death. The contestant's offer of proof contains the statement, that during the period of consultation with counsel, and when the will was signed, the testatrix was suffering from intense pain, causing her at times to scream with agony, and was under the influence of opiates most of the time, and was at all times mentally unbalanced and of unsound mind, due to mental anxiety, and the suffering caused by her incurable disease.

Shaw, who knew of the nature of his wife's illness, was not informed of her critical condition until December 14, when he received a letter from Myer that her "case was hopeless." With several of his friends he spent the succeeding days in attempts to obtain information as to her actual condition,

but was unsuccessful. On the evening of December 22, accompanied by other persons, he went to the house and was admitted by Myer who objected to his seeing Mrs. Shaw. But Shaw insisted and went upstairs to her room where he found her completely unconscious. He immediately left the house, to which he returned in the early evening of the next day when as he started to go upstairs Myer told him to wait. At this time Mrs. Shaw's voice could be heard, and it was obvious that she was suffering much pain. Myer went up and was absent for several minutes. While he was there some form of opiate was administered, and when he came down and told Shaw that he could go up, Shaw found his wife completely unconscious, and he did not see her again.

The will drawn under these alleged circumstances bequeathed to Myer outright personal property of the appraised value of $66,159.50, and a life interest in real property valued at $25,000, with a yearly annuity of $1,500. But she left none of her estate to Shaw except a portion of the income for his life derived from the residue, to be held in trust. Upon his death the trustee is directed from time to time to make a partial *pro rata* distribution of the principal to the individual legatees including Myer when in the judgment of the trustee such distribution may safely be made. Upon the death of the last survivor of the beneficiaries for life, the trust is to terminate, and the remaining estate is to be distributed among certain charities each of which is specifically named.

It cannot be held as matter of law that the issues requested were not supported by expected evidence to be introduced at the trial, the weight of which would be for the jury. *Cook* v. *Mosher*, 243 Mass. 149. *Clark* v. *McNeil*, 246 Mass. 250, 256. *Burroughs* v. *White*, 246 Mass. 258, 259. *Angell* v. *Lighthipe*, 251 Mass. 525.

The petitioner however contends that the second issue should have been limited to the inquiry whether the whole will, or only a part, was procured through the fraud or undue influence of Myer. The several charities, as well as Harry B. Chessman, Samuel W. Towne and Bradford L. Howe, to each of whom the testatrix also gave an annuity for life,

with the right after Shaw's death to receive in common with Myer a "partial pro rata distribution of the principal," are not charged with knowledge of his misconduct; nor does it appear that either had been promised, or expected a legacy. If Myer dominated the mind of the testatrix, and because of hostility, the scheme of the entire will apart from the gifts to himself, was to deprive Charles N. Shaw of property which he would have inherited if his wife had died intestate, it could be found by the jury, that the whole will was tainted with fraud. It was his will, and not the will of the testatrix. *Emery* v. *Emery*, 218 Mass. 227, *Neill* v. *Brackett*, 234 Mass. 367, 370, *Carroll* v. *Hause*, 3 Dick. 269. But if this was not shown, only the parts of the will by which he alone was benefited could be set aside, and the second issue should be framed accordingly. *Old Colony Trust Co.* v. *Bailey, supra.*

On the appeal of Effie Lighthipe, the entry will be, order affirmed. But on the appeal of the petitioner, while the first issue is to stand, the second issue is to be so modified as to read, "Was the will propounded for probate as the last will of said Lucinda E. Shaw procured to be made in whole or in part by the fraud or undue influence of Albert W. Myer exercised upon the said Lucinda E. Shaw, and if in part, what part?" and as so modified it is affirmed.

*Ordered accordingly.*