143 So. 561

### ATLANTA LIFE INS. CO. v. CANADY.

6 Div. 180.

Supreme Court of Alabama.

Oct. 6, 1932.

378

Rosenthal & Rosenthal, of Birmingham, for appellee.

Jim Davis, of Birmingham, for appellant.

KNIGHT, J.

Suit by Easter Canady against Atlanta Life Insurance Company. As originally filed, the complaint consisted of two counts. The first count was in Code form on a policy of life insurance issued by the appellant, insuring the life of Robert Canady, with the appellee, the insured's mother, as the beneficiary. The second count was for money had and received, and was also in Code form. The plaintiff subsequently amended her complaint by adding counts 3 and 4, and by striking from the complaint counts 1 and 2. In the third count, added by amendment, the appellee sought to recover of the defendant, Atlanta Life Insurance Company, the sum

of $372, alleged to be due the plaintiff by account on the 15th day of July, 1930. In the fourth count, the plaintiff sought to recover of the defendant the sum of $372 for money had and received by defendant for the use of the plaintiff on, to wit, July 15, 1930.

The defendant filed to the complaint, and to each count, separately and severally, ten pleas. There was a demurrer by the plaintiff to all pleas, except to plea 1, which was a plea of tender, and was substantially in Code form. The court sustained plaintiff's demurrer to pleas 2, 3, 4, 5, 6, 8, and 10, thus leaving in the case pleas 1, 7, and 9, and upon these pleas issue was joined.

The plaintiff's testimony tended to show that the defendant issued a policy of insurance on the life of her son, Robert Canady, payable on the death of the insured to plaintiff. That this policy was issued and dated August 20, 1928, and that plaintiff paid the company's collecting agent 15 cents each week as the premium on said policy. That after this policy had been issued, and while it was in force, the appellant company wrote a new policy on the life of appellee's son, whereby upon death of the insured, the beneficiary was to be paid $372. The premium on the new policy was 20 cents per week. The plaintiff's testimony further tended to show that at the time of her son's death she had been in possession of the policy over a year, and had paid all premiums due thereon. The testimony of the plaintiff further tended to show that shortly after the death of her son and while his body was in an undertaker's establishment, plaintiff, in company with a son, went to the office of defendant in Birmingham, Ala., and found in the office three women, and that one of the women, after examining the papers, gave the plaintiff the company's check for $372 in settlement of the claim. That plaintiff left with the defendant the policy, proof of death, and the doctor's certificate, and then plaintiff carried the check to the undertaker, who had the body of plaintiff's son in charge, and presented the check to him, presumably to pay burial expenses. That the undertaker then had a telephone conversation with some one in defendant's office, as a result of which plaintiff was instructed to return to the office. On her return, the plaintiff was required to surrender the check; the defendant's agent saying that it was improperly issued for $372, that the proper amount was $93, one-fourth of the face of the policy, in view of the fact that the insured had died before full six months had elapsed since the policy was issued.

The defendant's testimony tended to show that the first policy issued by it to Robert Canady was a "sick and accident" policy. That Robert Canady paid the premiums, about three in number, and then allowed the contract to lapse. That this policy was not converted into a life policy, and that it was never so converted. That the only life policy issued by the appellant on the life of Robert Canady was issued and dated January 27, 1930. That this policy was numbered 1606593, a copy of which alleged policy was introduced in evidence. One of the clauses of said policy provided that if death of the insured occurred before six months had elapsed that the death benefit would be one-fourth of the face of the policy—the face of the policy was $372. Defendant's testimony further tended to show that, before the suit was brought, the defendant tendered to plaintiff's attorney $93, being one-fourth of the face of the policy, in full settlement of the claim, which was not accepted.

Defendant's testimony further tended to show that no agent or representative of the company had authority to settle or pay death claims in the Birmingham office, but all such claims were forwarded to, and settled in, the home office at Atlanta, and that the home office had not authorized the issuance of any check to the appellee for $372, nor had any such check ever been drawn or issued to the appellee. That the paper written in the Birmingham office and handed to appellee was the company's receipt for death proof, book, and policy on the life of Robert Canady, and not the company's check. It also appears from the evidence that the tender alleged to have been made by the defendant company was made by check dated July 26, 1930, dated at Birmingham, drawn on the First National Bank of Birmingham, in the sum of $93, payable to the order of Easter Canady, and signed, "Atlanta Life Insurance Co., J. T. Harrison, D. M'g'r., Mary L. McGinnis, Cashier."

■■ It is first insisted that the court committed error in overruling appellant's objection to the following portion of the opening statement of appellee's counsel to the jury, "Insured his life," which words formed a part of the following statement: "Gentlemen of the jury, this is a case of Easter Canady, right there, this old colored woman, against the Atlanta Life Insurance Company, a colored insurance company, for the sum of three hundred and seventy-two dollars. We expect the evidence to show you this Easter Canady, this old woman, had a son by the name of Robert Canady; and that some time in August 1928, she insured his life with this company." No grounds of objection were assigned. While the complaint, after amendment, did not contain a count upon the policy of insurance, yet plaintiff's contention, and the theory upon which she sought a recovery in the case, was that the insurance policy had, in fact, been in force and effect for more than a year prior to the death of the insured, that proof of death had been duly and properly presented to, and filed with the company, that the amount due the assured thereunder

had been fixed and agreed upon, and that a check in her favor, as the beneficiary, had been issued and delivered to her; that this check had been recalled improperly, and that, therefore, the claim was enforceable by suit upon an account. If plaintiff's contention in this regard finds support in the evidence, she had the right to proceed by way of a suit on the common counts. Joseph & Bros. Co. v. Hoffman & McNeill, 173 Ala. 568, 56 So. 216, 38 L. R. A. (N. S.) 924, Ann. Cas. 1914A, 718; Dees v. Self Bros., 165 Ala. 225, 51 So. 735; Parker's Adm'r v. Hollis, 50 Ala. 411; Beadle v. Graham's Adm'r, 66 Ala. 99; Jones v. King, 81 Ala. 285, 1 So. 591; Dukes v. Leowie, 13 Ala. 457; Vincent v. Rogers, 30 Ala. 471; Stafford v. Sibley, 106 Ala. 189, 17 So. 324; Hunter v. Waldron, 7 Ala. 753; Merrill v. Worthington, 155 Ala. 281, 46 So. 477, 478.

In making plaintiff's opening statement to the jury, her attorney was within permissible bounds, in disclosing to them the basis and grounds of plaintiff's claim to a recovery, and what he expected the proof to show.

■ "In a case involving issues of fact, a party is of right entitled to make an opening statement to the jury, and may outline what he expects to prove, unless it is manifest that such proof is incompetent. The time when such statement should be made, and its general manner and character, are within the discretion of the trial court, such discretion being subject to review only when abused to the prejudice of the party complaining." 38 Cyc. 1475. There was no valid objection to the opening statement made by plaintiff's counsel, and the court properly overruled the same. O'Connell v. Dow, 182 Mass. 541, 66 N. E. 788; Falkenau v. Abrahamson, 66 Ill. App. 352; Chicago, etc., R. Co. v. Poore, 49 Tex. Civ. App. 191, 108 S. W. 504; Sinclair Co. v. Waddill, 200 Ill. 17, 65 N. E. 437.

Appellant's second assignment of error presents for review the propriety of the court's action in sustaining plaintiff's demurrer to plea 8. This plea is manifestly bad, and does not meet the issues presented by the complaint. Besides, if it was intended as a plea of tender, the defendant was not injured by this ruling of the court, as under plea 9 defendant could have had, and no doubt did have, the benefit of making the same defense presented by his plea 8. Therefore, defendant has no just ground of complaint. Aside from this, the plea, as above pointed out, was defective, and subject to the demurrer directed thereto.

■ It is urged that the court committed error in overruling defendant's objection to the following question propounded by plaintiff to the witness Rochelle Norris: "What did she say to you?" Suffice it to say that the record discloses no answer was made to this question.

The witness Rochelle Norris having testified that a woman in defendant's office, and apparently in charge thereof, had given plaintiff a check for the amount due under the policy to the beneficiary, and that plaintiff, after making a trip to the undertaker's establishment, returned to defendant's office with the check and that a woman in the office took back the check, thereupon the plaintiff's counsel asked this witness, "That was the woman that gave the check of the Atlanta Life Insurance Company?" The defendant objected to the question, and the court overruled the objection. The question sought to identify the person who took the check back, and was not subject to any ground of objection assigned thereto.

It is next insisted that the court committed error in overruling defendant's objection to the following question propounded by plaintiff to the witness Norris: "What did the woman say to you after she got the check back?" The record fails to show that the witness answered the question. We have examined all other exceptions reserved by the defendant to rulings of the court on admission and exclusion of testimony, and find no reversible error.

■ It is earnestly insisted by the appellant that the court committed error in refusing to give, at its written request, charge numbered 3, which was in the following language: "The court charges you, gentlemen of the jury, that if you believe the evidence you must find for the defendant under plea number one."

Plea 1 is a plea of tender. It is true that the evidence shows, without conflict, that defendant, before the suit was brought, tendered the plaintiff the sum of $93, and kept this tender good by bringing the tender money into court; but appellant overlooks one of the material averments of its plea, viz., that the amount tendered was "the total amount due under the policy sued on." The actual amount due was a question, under the evidence, to be determined by the jury. According to the evidence of plaintiff, the amount actually due was $372, and, under the defendant's evidence, the amount due was $93. The defendant was not, therefore, entitled to have the jury instructed in the terms of its refused charge 3.

What has been said with reference to refused charge 3 applies with equal force to refused charge 2.

■ Refused charges 1 and 13 were general affirmative instructions to find for the defendant. The defendant was not, under the evidence, entitled to have the jury so instructed.

■ Each of refused charges 4, 5, 6, 7, 8, 9, 10, and 12, directed finding for the defendant under pleas which were not in the case, and were therefore properly refused.

Refused charges 14 and 15 sought to have the jury instructed that there could be no finding for plaintiff under counts 1 and 2 of the complaint. Those counts were not then in the case. There is nothing in the holding of this court in the case of Scott v. Louisville & Nashville R. R. Co., 217 Ala. 255, 115 So. 171, which conflicts with the instant case on this point, nor is the Scott Case cited by appellant. The evidence offered by the plaintiff was admissible in support of her complaint as amended, and in this respect is unlike the situation presented in Scott's Case supra. The court was therefore warranted in refusing charges 14 and 15.

■ It is also urged that the court committed error in refusing each of its written charges 31 and 32. These charges were fully covered in given charges 25 and 26. In fact, charges 25 and 26 assumed it to be an uncontested fact that a tender of $93 had been made to plaintiff before the suit was instituted, and that defendant had kept the tender good by bringing the money into court.

Under the rule declared by this court in the case of Cobb v. Malone, 92 Ala. 630, 9 So. 738, we cannot affirm that the court committed reversible error in overruling appellant's motion for a new trial.

It follows that the judgment of the circuit court will be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.