## PRUDENTIAL INS. CO. v. CALVIN.

### 6 Div. 219.

Supreme Court of Alabama.

March 16, 1933.

Rehearing Denied April 13, 1933.

Further Rehearing Denied June 22, 1933.

Harsh, Harsh & Hare, of Birmingham, for appellant.

Taylor & Higgins and Chas. W. Greer, all of Birmingham, for appellee.

KNIGHT, Justice.

Plaintiff's husband, Paul T. Calvin, was an employee of the Louisville & Nashville Railroad Company, in the capacity of telephone lineman; and he was so employed at the time it is alleged he received his fatal accident.

This action was brought by the plaintiff to recover of the appellant the sum of $1,000, with the interest thereon, under the terms of what is called a group policy of insurance, written for the Louisville & Nashville Railroad Company by the appellant, covering its employees, and a certificate of insurance was duly issued to the said Paul T. Calvin, naming the plaintiff as the beneficiary. This policy was in force on November 16, 1930, the day it is alleged the insured received a fatal injury, and also up to the time of his death, which occurred on November 22d, 1930.

For death from natural causes, the policy provided that the insurer would pay to the named beneficiary the sum of $3,000. This amount was duly paid to the beneficiary. However, the insistence is made by Mrs. Calvin, and that insistence is reflected in this suit, that under the accident death benefit provision in said policy she was entitled to the payment of the further sum of $1,000. This the company denied, and hence the present suit.

The provision of the policy with reference to the payment of accidental death benefit is as follows: "In addition to the insurance on the life of any employee insured under this policy, and in consideration of the payment of the premium as hereinafter provided, the company will pay at its home office as an accidental death benefit, one thousand dollars immediately upon receipt of due proof that the death of such employee occurred while such employee was in the employ of the employer and insured under this policy, as a result, directly and independently of all other causes, of bodily injuries, effected solely through external, violent and accidental means, of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days of the accident, provided, however, that no accidental death benefit shall be payable if such death resulted from suicide—whether sane or insane; from having been engaged in aviation or submarine operations or in military or naval service in time of war; or from a state of war, riot or insurrection; or directly or indirectly from bodily or mental infirmity or disease in any form."

The case was tried on count 5 added by amendment. There was a demurrer to this count, as well as to the other counts of the complaint. All counts, except count 5, went out on demurrer, but the demurrer to count 5 was overruled. The policy of insurance was made a part of count 5, and fully set out therein. Two objections to the sufficiency of this count are presented in argument, and earnestly pressed upon our attention: (a) There is no averment in the count that due proof had been furnished the defendant that the death of said Paul T. Calvin was accidental under the terms of the policy, as required by the provisions of the policy; and (b) that notice of the death is not the equivalent that death occurred accidentally. The latter proposition, however, as we see it is not in fact presented or raised by any specific ground of demurrer.

The count avers that notice "as required by law of the death of the said Paul T. Calvin had been given the defendant."

It is earnestly insisted that the furnishing to defendant of due proof that the death of said Paul T. Calvin was accidental under the terms of the policy was a condition precedent to the right of recovery in this action. Counsel, in arguing this point, bring to our attention the cases of Fire Ins. Cos. v. Felrath, 77 Ala. 195, 54 Am. Rep. 58, and Protective Life Ins. Co. v. Swink, 222 Ala. 496, 132 So. 728, as well as authorities elsewhere. No such question was presented in the Swink Case; supra. That case only held that the burden of proof that the insured's·

death was accidental within the terms of the policy was upon the plaintiff throughout the case. In the Felrath Case, supra, the failure to furnish proper proof of loss was raised by special pleas, and not by demurrer to the complaint.

In our recent case of New York Life Ins. Co. v. Turner, 213 Ala. 286, 104 So. 643, it was held that, if the defense to the action is predicated upon a failure or refusal to furnish proof in form or substance as provided in the policy contract, such defense must be asserted by special plea. This holding in the Turner Case, supra, is supported by the pronouncement of this court in the case of Manhattan Life Ins. Co. v. Verneuille, 156 Ala. 592, 47 So. 72.

Learned counsel for appellant seems to recognize that the cases last above cited are against his contention, but endeavors to show that, in reaching the conclusion that the defense must be asserted by special plea, this court did not make "a careful examination of the authorities," or that it did not appear in those cases that furnishing "proof of loss" was a condition precedent to liability in the present case. Liability is present, but payment in extinguishment of liability is only deferred until proper proof is furnished. If suit is prematurely brought, that is, if the cause of action existed, but suit is brought before the required notice is given, that defect does not go to the destruction of the cause of action, but only to the postponement of the action thereon. Hence, if prematurely brought, that fact must be presented by plea—one in abatement of the action. Westchester Ins. Co. v. Green, 223 Ala. 121, 134 So. 881; Home Ins. Co. of N. Y. v. Murphy, 223 Ala. 566, 137 So. 393. No plea in abatement was filed. We therefore hold that the demurrer, as for any grounds interposed, and here argued, was properly overruled.

With its demurrer overruled, the defendant pleaded in short by consent the general issue, "with leave to give in evidence any matter which if well pleaded, would be admissible in defense of the action," etc.

■■ After the jury had been selected and impaneled, the plaintiff's counsel undertook to make an opening statement to the jury in which he made the following statement: "Now, may it please your honor, and you, gentlemen of the jury, in reply to what he said (referring to counsel for defendant), we expect the evidence to show you instead of what Mr. Harsh said that this man, in a dying condition, at the telephone post, made the statement * * * the first man that got there was Chief Clem, Chief of the Fire Department of Fairfield, and he told him 'There was that wire, which is heavily charged; don't go close to it, because I am dying now, I am in a dying condition, and it knocked me off, it struck me on the back of the hand

and knocked me off the post.' We expect the evidence to show you Chief Clem of the Fire Department will swear to that on the witness stand, this man's statement that he was injured in that manner. There was one white man and two negroes that perhaps saw him get the shock, but this was the first man that talked to him about the injury, Chief Clem, and chief authority, of the Fire Department, and Bob Grant, of the Fire Department; and that he, there, explained to him the details of the injury, right then and there." The defendant objected to the foregoing statement, the court overruled the objection, and the defendant duly excepted.

Of course, within proper bounds, counsel have the right, in putting their case to the jury, to state to the jury their theories of the case and what they, in good faith, expect the evidence to show. Atlanta Life Ins. Co. v. Canady, 225 Ala. 377, 143 So. 561; 38 Cyc. 1475; O'Connell v. Dow, 182 Mass. 541, 66 N. E. 788; Sinclair Co. v. Waddill, 200 Ill. 17, 65 N. E. 437.

The statement does not show that the facts proposed to be proved were of the res gestæ, and was therefore improper.

■ It is next insisted that the court committed reversible error in admitting, over defendant's timely objection, the paper purporting on its face to be "the death certificate" of Paul T. Calvin. This certificate was issued and signed by J. D. Dowling, M. D., Registrar, and beneath the word "Registrar" appear the capital letters B. R. This certificate is headed: "Jefferson County Board of Health, Birmingham, Alabama, Bureau of Records and Vital Statistics." Transcript of the record of death, Birmingham, Ala., June 15, 1932.

This court will take judicial knowledge of the fact that Dr. Dowling was health officer of Jefferson county on June 15, 1932, and that certificate in question was issued by him as the registrar.

■ It is insisted that the certificates of births and deaths must be obtained from the state registrar, under the provisions of section 1087 of the Code (as amended by Gen. Acts 1927, p. 780). Of course, the state registrar may issue certificates of births and deaths, but he is not the only officer that has such authority. We are fully persuaded that under section 7674 of the Code Dr. Dowling was authorized to make and furnish the certificate, and that the same, as for any grounds of objection urged thereto, was properly admitted in evidence. Code, § 7674; Hawes v. State, 88 Ala. 37, 7 So. 302; Metropolitan Life Ins. Co. v. Parks, 210 Ala. 261, 97 So. 788; Benefit Association of Ry. Employees v. Armbruster, 221 Ala. 399, 129 So. 78.

■ The action of the court in overruling defendant's objection to the following question, propounded to plaintiff, when on the

stand as a witness in her own behalf, it is claimed by appellee, finds support in at least one decision of this court. The question was: "When your husband left home that morning, Mrs. Calvin, tell these twelve jurors whether he was in good sound health?" In support of the correctness of the ruling, the case of American National Ins. Co. v. Rains, 215 Ala. 378, 110 So. 606, is cited. In that case a son of the deceased was allowed to testify that at the time of the delivery of the policy the health of deceased was pretty good. The majority of the court were of the opinion that this statement was in effect the same as a statement that the health of assured seemed or appeared to be good, and must have been so understood by the jury; and hence they held it was not error to admit it. But here quite a different question is presented. The witness was called upon to state, and did state, as a matter of fact, her husband was in good, sound health at the time he left his home that morning. The ruling of the court was fundamentally erroneous, and cannot be justified. It called for opinion evidence, which a layman cannot give. It called for the opinion of an expert. The witness was not an expert. In this ruling of the court there was reversible error. Sovereign Camp, W. O. W., v. Hutchinson, 217 Ala. 71, 114 So. 684. Had the question asked for the appearance of the insured, at the time he left home, it would have been proper. Such was not the question asked.

■ There was no merit in the defendant's objection to the question asked the witness Clem, viz.: "Did he or not, Mr. Clem, appear to be suffering great agony?" Bradley v. Lewis, 211 Ala. 264, 100 So. 324. The case of Johnston v. Warrant Warehouse Co., 211 Ala. 165, 99 So. 920, is not an authority in point sustaining appellant's contention.

■ The appellant insists that the court committed reversible error in sustaining plaintiff's objection to the following question propounded to the witness Dr. Moore: "Now, Dr. Moore, assuming that Mr. Paul T. Calvin, the man whose death was involved in the trial of this case, had come out to your hospital and had assisted in holding the delirious man in his bed, the man whose death occurred, O. E. Calvin, who died of pneumonia, a day or two before his death, and assuming that Mr. Paul T. Calvin, three days after that, began by having chills and began having high fever, and then was carried to the hospital and about eight days later died of pneumonia, I will ask you to state whether or not in your judgment it is likely or probable that the infection of the pneumonia that killed him started by reason of or at the time of the exposure to his brother's condition?" The question assumed a fact as to which there was no evidence in the case up to that time (nor any subsequently admitted as to chills), viz., "began by having chills,"
"and began having high fever." The court therefore properly sustained plaintiff's objection to the question. Brown v. Mobile Electric Co., 207 Ala. 61, 91 So. 802; Birmingham Ry. & Electric Co. v. Butler, 135 Ala. 388, 33 So. 33; Long Dist. T. & T. Co. v. Schmidt, 157 Ala. 391, 47 So. 731; Grasselli Chemical Co. v. Davis, 166 Ala. 471, 52 So. 35; 11 R. C. L. p. 579, § 11.

Likewise, and for the same reason, the second hypothetical question propounded by the defendant to Dr. Moore was subject to the objection pointed out by the plaintiff, and his objection was properly sustained.

■ We are of the opinion that the court committed no reversible error in sustaining defendant's objection to the following question propounded to the witness C. E. Crow: "Was there any way at the time you left there that any one of the wires of the L. & N. Company's poles could come in contact with the high powered lines?" There was no evidence in the case that this man was an expert in the matter inquired about, or that he possessed any skill not possessed by the ordinary layman. The question called, not for the shorthand statement of a fact, but for the opinion and conclusion of the witness. The question was therefore clearly objectionable. The witness should have been called upon to state the facts, and leave it for the jury to draw the conclusion. For similar reason there is no merit in appellant's fifteenth assignment of error. There the question was almost identical to the question made the basis of appellant's fourteenth assignment of error.

■■ While Dr. James A. Ward, a witness introduced by defendant, and who had testified that he was a practicing physician in the city of Birmingham, and whose qualifications as a doctor were admitted, was on the stand, he was asked by plaintiff, on cross-examination, the following question: "I will ask you whether or not as a physician and surgeon and specialist along this line, whether or not in your judgment that a man can be electrocuted and not even leave a burn?" The defendant objected to this question on several grounds, none going, however, to the frame of the question. The court overruled the objection and defendant excepted. The witness answered "Yes." This witness had previously testified: "I have seen people who have been electrocuted. In my practice as a physician and surgeon I have seen people who were electrocuted." The witness was competent and qualified to give his opinion on the subject inquired about, and defendant can take nothing by this exception. Nor did the question call for immaterial testimony. In connection with the testimony of the witness Milton Thompson, who testified to seeing a red spot across the back of the deceased's hand, shortly after the alleged accident occurred, it was material and relevant.

The defendant objected to the following question propounded to the witness Dr. Ward by the plaintiff: "I will ask you to state whether or not if a man has been lying on the ground since about eleven or eleven-fifteen, A. M. until two o'clock, whether or not it would be possible that his lung would be congested, as the lung you found in Paul T. Calvin, when you examined him. I will hypothesize the case further by adding where he was on the wet ground and on the 16th day of November the day you saw him, and the weather conditions the way you saw them that day, and the ground wet?" This question was clearly subject to the very apt objection assigned to it. There was not only no evidence in the cause at the time, nor any subsequently introduced, to show or tending to show that the deceased lay upon the ground until 2 o'clock. On the contrary, at that hour he was in bed at home. The witness, in reply to this question, answered: "It is possible." This answer of the witness no doubt had great weight with the jury, and very probably a controlling influence in reaching the verdict it did in this case. The answer was highly beneficial to the plaintiff, and correspondingly injurious to the defendant's case. The court committed error in overruling defendant's objection to the question. Brown v. Mobile Electric Co., supra; Thaggard v. Vafes, 218 Ala. 609, 119 So. 647; Birmingham Ry. & Electric Co. v. Butler, 135 Ala. 388, 33 So. 33.

That part of the court's oral charge, made the basis of appellant's thirty-eighth assignment of error, to which exception was reserved, is taken from its setting, and by so doing it is made to appear that possibly undue emphasis was placed thereon by the court. Read in connection with, and as a part of, the paragraph from which it is excerpted, it was not improper.

Nor is there any merit in appellant's assignment of error 39, which presents for review another excerpt from the court's oral charge. The court simply corrected, by this additional statement to the jury, a previous statement as to when interest would begin to run on the demand, and was a proper correction and a proper statement of the law of the case as affecting the interest item.

The defendant was not entitled to have the jury instructed in the terms of its refused charges A–1 and G. If not otherwise objectionable, the testimony of the witness Milton Thompson precluded the giving of these two charges.

Charge A–2, copied on page 103 of the transcript, and charge a–2, copied on page 32 of the transcript, are identical, and sought to have the jury instructed that there is no evidence that the defendant was furnished due proof that Paul T. Calvin's death resulted directly and independently of all other causes, of bodily injuries effected solely through external, violent, and accidental means, of which there was a visible contusion or wound on his body.

Defendant, in its answers to interrogatories propounded to it by plaintiff, and which answers were read in evidence, admitted that it had received notice of the death of said Paul T. Calvin, and that it received said notice on December 22, 1930.

There was no proper plea in this cause that the proof referred to in said charges had not been given. The charges were therefore abstract, and sought to inject into the case an issue not before the court.

The defendant was not due the general affirmative charge.

The testimony of Milton Thompson, in connection with the other evidence, was sufficient at least to carry the case to the jury, certainly under the scintilla rule here prevailing. It will serve no useful purpose to restate here the evidence to demonstrate the fact that the defendant was not due the general affirmative charge. Whether the evidence was sufficient to support the verdict we need not now determine. Nor need we consider the propriety of the court's action in overruling the defendant's motion for a new trial, nor his motion for judgment non obstante veredicto, as the cause must be reversed for the other errors heretofore pointed out.

The construction that counsel for appellant attempts to place upon the clause in the contract providing for accidental death benefit is strained and unjustified, and we cannot follow him in his interpretation of the language employed in this clause of the policy contract. The appellant insists that there is a very substantial difference in the language of the contract now before us and the language under consideration in the Armbruster Case, supra, and in the Hoehn Case, 215 Ala. 109, 110 So. 7, as well as that construed in the case of Fidelity Co. v. Meyer, 106 Ark. 91, 152 S. W. 995, 44 L. R. A. (N. S.) 493; that this difference in language is caused by the transposition of the phrase "directly and independently of all other causes." We are not called upon to agree or not to agree with counsel in this contention.

The language of the policy contract now sued on, in the particular now before us, is practically the same as was the language in the contracts sued on in the case of Benefit Association of Ry. Employees v. Armbruster, supra, and in the case of Standard Accident Ins. Co. v. Hoehn, supra.

We are quite content to reaffirm and adhere to our holding in the above cases. The clause means, and can only mean, under liberal rules of construction in favor of insured in construing insurance contracts, that the accident shall be the proximate cause of death, "and

not exclusive of other conditions, means or circumstances." Authorities supra.

The defendant's written charges S, H–1, 1–a, and U, each being a general affirmative charge, with hypothesis, were properly refused, as heretofore pointed out.

We have deferred to this point consideration of the many assignments of error relating to the argument made to the jury by counsel for plaintiff. Many of the statements of counsel for plaintiff were improper, and highly prejudicial. The court time and again so ruled. Nevertheless counsel continued to make statements that were no part of a proper argument on the facts of the case, but which could only appeal to passion and engender prejudice.

We feel it our duty to remind counsel that, although the trial court may interfere and exclude improper arguments, such action does not always eradicate the evil and poison, and in such cases this court will not hesitate to set aside a verdict, the direct offspring of bias and prejudice so engendered by an improper argument. Inasmuch as this case must be reversed for other errors, we do not now feel called upon to decide whether or not some of the statements of counsel for plaintiff were not so prejudicial as to have required judicial interference here with the verdict rendered in the cause, even if there had been no other errors in the record.

For the errors pointed out, the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.

On Rehearing.

KNIGHT, Justice.

The provision in the policy contract, viz., "or directly or indirectly from bodily or mental infirmity or disease in any form," means, and can only mean, when construed in connection with the precedent clause, that, if the insured was suffering at the time of the accident with some infirmity or disease, and the accidental injury, operating with the disease, produces death, then this would not create liability; but, where the accident directly and immediately, exclusive of other causes, produces the bodily infirmity or disease, and death results therefrom, then the accident must be held to be the sole proximate cause of the death.

To hold as contended for by appellant, this clause in the policy contract would require a construction that it embraced accidents, which produced immediate death, without intervening complications, which the accident itself produced.

To state it in different language, the exception in the policy is against liability for death produced by the accident and disease, which the accident did not produce, and not from liability for death caused by disease or infirmity, which the accident itself did produce. First National Bank of Birmingham v. Equitable Assurance Society of U. S., 225 Ala. 586, 144 So. 451; Cook v. Continental Ins. Co., 220 Ala. 166, 124 So. 239, 65 A. L. R. 921.

There were tendencies of the evidence which did not justify the court in giving, at the request of the defendant, the affirmative instruction in its behalf. The evidence required the submission of the case to the jury.

Application overruled.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.