11 So.2d 756

## DANIELS v. STATE.

I Div. 162.

Supreme Court of Alabama.

Jan. 21, 1943.

Rehearing Denied Feb. 18, 1943.

Wm. V. McDermott, Wm. E. Johnston, and S. W. Pipes, III, all of Mobile, for appellant.

678

Wm. N. McQueen, Atty. Gen., and Walter W. Flowers and John O. Harris, Asst. Attys. Gen., for the State.

THOMAS, Justice.

The offense is rape, the verdict guilty, and the sentence death.

The appellant Henry Daniels, Jr., was separately indicted with one Curtis Robinson by the October Term, 1941, Grand Jury of Mobile County, charging him with having forcibly ravished Zeola Mae Armstrong, a woman. Being unable to employ counsel, two practicing attorneys at the Mobile Bar were by the court on October 22, 1941, appointed to represent appellant on his trial below. Appellant was arraigned upon said indictment on November 4, 1941, at which time he pleaded "not guilty" and his trial was set for November 25, 1941.

On November 17, 1941, in open court in the presence of appellant and his counsel, a special venire for appellant's trial was ordered and drawn, and a copy of the indictment was ordered to be forthwith served on the defendant, together with a list of the jurors constituting such venire. The case proceeded to trial on November 25, 1941, and not being completed on said date, the trial was recessed until the next day for its conclusion, after which the jury brought in its verdict of guilty as charged in the indictment, fixing appellant's punishment at death by electrocution. The lower court remanded appellant to jail to await the action of the court, and two days later the lower court entered its judgment of guilt upon the verdict against appellant for said offense of rape, and at said time, duly sentenced appellant to suffer death by electrocution. Notice of appeal was immediately given, and request made for a suspension of execution of the sentence pending appeal, which was granted.

■ The record fails to show that the sheriff served on defendant copy of indictment and venire in pursuance of the order of the court. It is declared: "Where the record shows that the court has ordered the sheriff to serve a copy of the indictment and venire upon the defendant in compliance with this section the presumptions are in favor of the sheriff having faithfully discharged his duty in the absence of any showing in the record. Hughes v. State, 117 Ala. 25, 23 So. 677; Breden v. State, 88 Ala. 20, 7 So. 258." Code 1940, T. 30, § 63, and note.

Appellant's counsel state that the court erred in overruling the objections of appellant to the preliminary statements of the state solicitor, viz:

"That the two defendants Henry Daniels, Jr., and Curtis Robinson, have gone together and often discussed and talked about, and expressed the desire to have sexual intercourse with a white woman. * * *

"This defendant and Curtis Robinson, who is not being tried here today, often talked about their desire to have sexual intercourse with a white woman. * * *

"Henry Daniels, Jr., and Curtis Robinson were together that night and again expressed this desire."

■■ The nature and scope of respective statements by counsel to the jury have been discussed in many jurisdictions. The general rule is thus stated in 64 Corpus Juris, p. 235, § 251:

"Although it may be omitted if desired, a party is entitled as of right, in a case involving issues of fact, to make an opening statement to the jury. Its purpose and function is to advise the jury of the facts relied on by the party to make up his right of action or defense, to define the nature of the questions involved, and advise them of the issues to be tried so as to enable them to understand the case to be tried. In the statement counsel may outline what he expects to prove (Brown v. Leek, 221 Ala. 319, 128 So. 608; Atlanta Life Ins. Co. v. Canady, 225 Ala. 377, 143 So. 561), unless it is manifest that such proof would be incompetent or the offer or statement made for the manifest purpose of creating prejudice and influencing the jury, and he may state an anticipated defense of his opponent in so far as it appears of record. * * * Counsel should be allowed considerable latitude in his opening statement, but in the absence of regulation by statute, the time when it should be made, its fullness or brevity, and its general manner and character, rest largely within the discretion of the trial court, which must necessarily rely upon the good faith of counsel properly to confine his remarks. Counsel must restrict his opening statement to the issues of the case, and to the theory of the case as fixed by the pleadings, and although it is ground for reversal for him to call attention to collateral matters calculated to prejudice the jury, the fact that statements proper in themselves might also produce other collateral consequences harmful to the opposite party does not, if made in good faith, make the statements improper. Counsel will not be permitted to make the opening statement a medium for arguing the merits or the law, nor will the relation of testimony at length be tolerated. * * *."

See, also, 38 Cyc. 1475; Handley v. State, 214 Ala. 172, 106 So. 692.

In Wilkey et al. v. State ex rel. Smith, 238 Ala. 595, 192 So. 588, 589, 129 A.L.R. 549, this court stated the effect of our decisions on this question as follows:

"In Loeb v. Webster, 213 Ala. 99, 104 So. 25, to unduly limit the opening statement of counsel was held to be error. In Birmingham Baptist Hospital v. Branton, 218 Ala. 464, 118 So. 741, it was held not to be improper to state the facts or to remark that the mother would suffer by baby's death. In Brown v. Leek, 221 Ala. 319, 128 So. 608, it was held that immaterial and prejudicial matter may not be introduced in opening statement of counsel, that the time, manner and character of said statement was within the discretion of the trial court. In Atlanta Life Ins. Co. v. Canady, 225 Ala. 377, 143 So. 561, it was held that opening statements may disclose the basis of the suit and the source of title. In Prudential Ins. Co. v. Calvin, 227 Ala. 146, 148 So. 837, it was held that counsel may, in good faith, show the theory on which the proceedings were had and state the facts of the res gestae.

"In Atlanta Life Ins. Co. v. Ash, 228 Ala. 184, 188, 153 So. 261, 264, this Court said: 'The right of counsel to make a preliminary or opening statement to the jury is fully recognized in this jurisdiction, but this right is not unlimited. The purpose and function of such a statement is to advise the jury of the facts relied upon to make up his right of action or defense, "to define the nature of the questions involved, and advise them of the issues to be tried so as to enable them to understand the case to be tried." Counsel, of course, may, in a reasonable way, outline what he expects to prove, unless it is manifest that such proof would be incompetent, or the offer or statement is made for the purpose of improperly influencing the jury. * * *.'"

In this connection, we observe that there were objections and exceptions to the introduction of the confession in evidence, and in the closing arguments of the state's solicitor to the jury he said, "These boys were going about talking about getting some white woman," referring to the conversations and actions of the defendant in question, and of Curtis Robinson, the defendant in another case presently before this court. The specific evidence on which this argument rested was before the jury by way of the confession of defendant, that:

"Curtis Robinson and I were talking about getting a white woman. This happened about one week ago while he and I were working at Turner Terminals. We

agreed to sometime get a white woman, and on last night when we started out of the alley and saw this white woman coming Curtis said 'here comes a white woman let us * * *' and I said all right and we did what I have told."

Both of the remarks were relative to the woman in question.

"About three o'clock yesterday afternoon Curtis Robinson and I were at the C. I. O. Hall on Warren and Elmira Streets and he and I talked about getting a white woman. We agreed to get one last night and when he and I left his house last night we were going to look for a white woman and the lady whom we took in the alley is the first one whom we saw."

When the defendant was on the stand as a witness in his behalf he made denial of the matter above indicated in his written confession as follows: "I did not see this white lady coming along the street and I did not say, 'Here comes one now. Let's get her.' I never saw her before until she came to the City Jail. I never saw this woman until they brought me to the jail. * * * No, sir, Robinson wasn't scratched on the chest and the arms, he was scratched right up here and there. No, sir, this white lady is not the one who scratched him in an effort to get away from him and me, his wife scratched him. * * * As to whether Josephine Jones sat there and pointed her finger at me and said I was the one who had raped this white lady, she said she saw us run. * * * No, sir, I never denied it when Josephine Jones told you that me and Curtis Robinson ran out of this alley because I didn't do it. As for when I was brought in the Police Station where you say Mrs. Zeola Mae Armstrong was sitting on a bench with her husband, and you say she said, 'Yes, that is one of them,' and that I never denied it, she didn't say it. * * * In answer to your question, 'At the Police Station, didn't they bring Curtis Robinson into your presence and he said, "I have already told them all about us attacking that white woman", and then you said that you did too, didn't you', and my answer is, he didn't tell me that. * * *."

■ Was the action of the state's counsel, in stating the case to the jury and in the argument indicated, an unnecessary and prejudicial and unwarranted appeal to race prejudice? Loeb v. Webster, 213 Ala. 99, 104 So. 25; Anderson v. State, 209 Ala. 36, 95 So. 171; Moulton v. State, 199 Ala. 411, 74 So. 454. The answer must be based upon the facts of this particular case.

Where there was a conspiracy to rape some white woman made by this defendant and a coconspirator in the crime, important facts for the consideration of the jury are the intent and the identity of defendant as to the commission of a crime against a female of another race.

In Jackson v. State, 229 Ala. 48, 155 So. 581, 582, the general rule is thus stated: "Evidence of other and distinct criminal offenses, at other times and places, is admitted in evidence only in exceptional cases and for limited purposes. Among these are cases where such evidence may throw light on the motive, intent, scienter, or identity, and so tend to establish the guilt of the party of the offense for which he is being tried. The details of such other crimes are not admissible, except in so far as essential to disclose the motive or other matter for which it is admitted. Gassenheimer v. State, 52 Ala. 313; Ingram v. State, 39 Ala. 247, 84 Am.Dec. 782; Moore v. State, 10 Ala.App. 179, 64 So. 520; Davis v. State, 213 Ala. 541, 105 So. 677."

We are brought to the reconsideration of the later decisions touching the immediate case. In Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635, it is observed: "The case of Wilkins v. State, 29 Ala.App. 349, 197 So. 75, bears some analogy. And in Wilder v. State, 1 So.2d 317, the Court of Appeals had a similar question here presented. See, also, the recent United States Supreme Court case of Lisenba v. People of State of California, 314 U.S. [219], 62 S.Ct. 280, 86 L.Ed. [166]. The other offenses here shown were all of similar character, committed within the same territory and all within a period of eighteen days. It is to be noted also that in each instance the victim was a white woman, which bears significance in view of defendant's remark concerning white women as testified to by Mrs. Sloan, hereinafter set out. The only issue was one of identification, and under the principle of the above-noted authorities this proof was properly admitted."

■■ In Wilkins v. State, 29 Ala.App. 349, 197 So. 75, we find apt quotations from Underhill's Criminal Evidence, 4th Edition, § 181, p. 318, and in Wilder v. State, Ala.App., 1 So.2d 317, pertinent quotations from The Chamberlayne Trial Evidence (Tompkins), p. 659, § 692, to the ef-

fect that where a crime has been committed by some novel or extraordinary means or in a peculiar or unusual manner, evidence of recent similar acts or crimes by the accused committed by the same means or in the same manner are provable to identify the accused as an inference from the similarity of method. And that identifying characteristics of a given person may be shown by what happened on other occasions which took place at or about the same time and it is not material should the identification by these means result in showing he had committed other criminal offenses. Like discussion is indicated as to be found in Wigmore on Evidence, 2d Ed., §§ 215, 216, 217, pp. 456–464; Wharton's Criminal Evidence, Vol. 1, 10th Ed. §§ 31 (p. 59, 60) and 34 (p. 133–140).

■ On this criminal assault by a negro upon the white woman passing that way, it was an unnatural and unusual act, making competent the evidence indicated illustrating the purposes of the two defendants to commit such a crime and the remarks immediately preceding as to their intent and to identify the accused. In Davis v. State, 233 Ala. 202, 172 So. 344, this court awarded a certiorari for that the difference in the races was unnecessarily brought into the case to the defendant's prejudice. The facts of this case are not within this rule but constitutes a conspiracy to rape a white woman. The defendant was accused of this crime by a woman of his own race, was also identified by the prosecutrix and he did not deny his guilt. Clark v. State, 240 Ala. 65, 197 So. 23. This and the evidence identified this defendant and his coconspirator as the perpetrators of the rape.

■ The foregoing is sufficient to justify the statement of counsel to the jury of what he expected to show by the evidence of the unusual and unnatural crime and of the identity of this and the defendant in the other case now before this court, which they confederated and conspired to commit on a white woman. It results that there was no error in the preliminary statement of the state's counsel to the jury or that of the several rulings on the same by the trial court as to the introduction of the evidence, and of the observations in argument of state's counsel predicated on such facts.

■ We have examined the record and hold that the confession made by this defendant and in evidence, over his objection and exception, was properly introduced, a sufficient predicate having been previously laid for its introduction under the many decisions of this court which obtain. Redd v. State, 69 Ala. 255. The test of competency of a confession of a defendant against his own interest is that under all the surrounding circumstances it had not been induced by a threat or promise, expressed or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor. If so, whether true or false, such confession must be excluded from the consideration of the jury as having been procured by undue influence. Wharton's Criminal Evidence, § 673.

■ We may observe of the exhibits of clothing worn at the time and place in question which were offered in evidence, that they were material by reason of the fact some of them were marked or printed in the name of the defendant and further the evidence showing that at the time it was drizzling rain and the shirt was wet in the back and the pants were soiled below the knees. The tests or analyses made of the different and significant stains on defendant's clothing tended to show the recent sexual intercourse, and the more specific stains and soiled places on the front of defendant's pants and those from the knees down were to like effect. 22 C.J.S., Criminal Law, p. 1216, § 713; Crenshaw v. State, 207 Ala. 438, 93 So. 465; 16 C.J. p. 620, § 1227.

The articles of wearing apparel were properly identified by the evidence. Pate v. State, 150 Ala. 10, 43 So. 343.

■ There is an assignment of error based upon the ruling of the trial court in this: that the state's witness Rollins, being cross-examined by appellant's counsel, had testified that "after this boy (appellant) was confronted with the other one (we interpolate Curtis Robinson), and admitted his guilt, we decided to get them over in the county jail for safekeeping," and "we brought him (appellant) over to Dr. Grubbs' office in a car. * * * Dr. Grubbs' office is on the ground floor of the jail." Following this the question was asked by defendant's counsel, "You stated that these defendants were taken to Dr. Grubbs' office, which is right on the street, in order that they would be safer there than they would in the police station?" This question sought to elicit facts with-

out the record, and the objection of the state's counsel that the same was incompetent, irrelevant and immaterial and argumentative was properly sustained.

The witness John W. Corsey was examined on direct examination by appellant's counsel and testified that he was in the C. I. O. Hall on the night of August 19, 1941, when a lady, the prosecutrix, came in with some police officers and was asked the question, "Did she at that time identify a person in the C. I. O. Hall as one of the persons who attacked her?" and "Did she at that time point out a boy in that hall as the one who attacked her?" To these questions, the state's counsel objected, objections were sustained and exceptions duly reserved. These questions called for a collective fact as to her having identified or pointed out some other person than the two defendants or the one of them now on trial as being the perpetrator of the crime in question. The many cases of shorthand rendition of fact from this jurisdiction are set out in 69 A.L.R. 1169. We also refer to a line of our cases on this subject from Reeves v. State, 96 Ala. 33, 11 So. 296; Jones v. Keith, 223 Ala. 36, 134 So. 630; Pollard v. Rogers, 234 Ala. 92, 173 So. 881.

No doubt the court was ruling under the law that obtained before the Acts of 1927, p. 636, now Code 1940, T. 7, § 445, and it was not made plain to him, nor what the answer of the witness would be or its materiality. This, however, was not the rule at the time of this trial. The state's solicitor then examined the witness as to the matter and he fairly answered the question denied by the ruling of the court. Thus, it is shown, and we may here observe, the brief of attorney general informs us, that this question is not presented in the case of the coconspirator, which case is now on appeal here.

Further indicating that the ruling adverted to and made as to witness Corsey was without error, it should be noted, the prosecutrix testified that detective Brown with officer Smith went out to Elmira's Alley that night (the alley in question) between ten and ten-thirty, and the scout car officers took the prosecutrix to the C. I. O. Hall (the time and place indicated in the Corsey testimony), where they had arrested a man by the name of Louis Joseph Pezant, who was there, and she at such time and place and in their presence and hearing, pointed to Pezant and said, "He looks like one of them." This statement was verified by the defendant's witness Pezant, and was the matter sought to be inquired about from witness Corsey, and was as stated by Corsey on further answer.

A further error insisted upon was the action of the solicitor for the state in opening his argument, and in paying a verbal tribute to jurors for coming into court and serving with the court without excuse, and thus discharging an important civic duty, and further stating that he took such occasion, while representing the state, to say this to the jury.

Appellant's counsel urges that the foregoing remarks of the solicitor amounted to an unwarranted and improper appeal, such as was condemned in Stewart v. State, 18 Ala.App. 92, 89 So. 391. We are not in accord with this view. A consideration of all the evidence in this case convinced us that the defendant had a fair trial under the law and such general remarks of the state's solicitor as are now urged as error are not sufficient for a reversal. Such observations are frequently made in argument of counsel in opening and closing remarks to the jury. It cannot be gainsaid that the currying of favor with the jury or unlawfully stirring their passions or prejudices is without a lawful place in our jurisprudence. This was not being done by the state solicitor in his remarks to the jury which found the defendant guilty as charged and imposed the extreme penalty of the law for his despicable act, for which he was being tried.

The able brief filed by counsel, other than that appointed by the trial court on the arraignment, does not specifically discuss the several charges that were refused to the defendant. We have tried to follow the argument of that counsel in determining whether the record discloses error and are of the opinion that when the oral charge of the court is taken with appellant's written charges, the law of the case was properly presented to the jury.

Refused charge 3 is fully and fairly covered by the oral charge of the court.

Refused charge 4 was held good in Prater v. State, 107 Ala. 26, 32, 18 So. 238. However, it was covered by the oral charge.

Refused charge 7 was held bad in Wilson v. State, Ala.Sup., 8 So.2d 422, 439;[1]

---

[1] Ante, p. 1.

Ex parte Davis et al., 184 Ala. 26, 63 So. 1010; McDowell v. State, 238 Ala. 101, 189 So. 183.

Refused charge 8 was held good in Elmore v. State, 92 Ala. 51, 9 So. 600; Browning v. State, 28 Ala.App. 129, 131, 180 So. 105; Gilbert v. State, 20 Ala.App. 565, 104 So. 45. This is another way of charging on reasonable doubt and this was fully and fairly covered by the oral charge.

Refused charge 9 was dealt with in Wilson v. State, Ala.Sup., 8 So.2d 422, 437,[1] and in Farrish v. State, 63 Ala. 164, where Judge Stone said that the proposition asserted was properly refused because without explanation it is calculated to mislead the jury. Best on Evidence, § 95.

Charge 11, refused to defendant, is incorrect in that it usurped the province of the jury. There are two theories under the evidence in this case. The jury are the judges of the credibility and sufficiency of the evidence. And under this charge the jury would be required to acquit the defendant even though they might believe beyond a reasonable doubt of his guilt after considering all of the evidence. Carpenter v. State, 98 Ala. 31, 13 So. 534; 4 Ency. Digest § 537[1], p. 400.

Refused charge 13 was approved in Edmonds v. State, 16 Ala.App. 157, 75 So. 873. However, the instruction thus sought to be given to the jury was fully covered by the oral charge.

Refused charge 14 was held to be a proper instruction in McLeroy v. State, 120 Ala. 274, 275, 279, 286, 25 So. 247. This charge is covered by the oral charge and also finds duplication in given charge 16. Pate v. State, 150 Ala. 10, 43 So. 343.

Refused charge 15 was criticized by Mr. Justice Sayre for the court in Ducett v. State, 186 Ala. 34, 37, 65 So. 351, where he said that there was evidence to prove defendant's good character and he was entitled to have the jury instructed as to the proper function and possible effect of such evidence, but charge 3 (there in question), refused to the jury, "goes further than any charge on the subject which has been approved by this court," and that strictly speaking, proof is demonstration and the charge assumed there was proof of such good character, when, so far as the court could properly say, there was only evidence tending to establish defendant's good char-

acter. However, when the oral charge is looked to, the matter sought to be thus given to the jury was fully and fairly covered.

Refused charge 12 is bad for the reason stated in Sanders v. State, 134 Ala. 74, 32 So. 654. It is restricting the measure of proof required to convict to that furnished by the prosecution instead of the whole evidence in the case. The same criticism may be made of refused charge 12 in this case. That is to say, the jury will look to all of the evidence to ascertain the question of guilt or innocence, and not alone to that furnished by the prosecution. In this case there were incriminating tendencies of evidence given by the defendant on cross examination. For this reason, there was no error in the refusal of this charge. Howerton v. State, 191 Ala. 13, 67 So. 979.

In McCoy v. State, 170 Ala. 10, 54 So. 428, it was observed that charges may well be refused that have a tendency to lead the minds of the jury away from the direct evidence to a decision of the issue upon a consideration of the strength or weakness of one phase of the evidence, where there is evidence, if considered by the jury, that would justify a verdict of guilty. The action of the trial court in refusing charge 12 was without error.

Adverting to the evidence, we may observe that, one cannot carefully consider the testimony of the prosecutrix Mrs. Armstrong, her immediate complaint to Laura Walker, her physical condition detailed by that witness, the testimony of the druggist Cain, of Dr. Newman, of Josephine Jones and of witness Brown (all of which corroborate the statements contained in the written confession of the defendant), together with admissions of facts contained in defendant's testimony, without being convinced that there can be no doubt of defendant's guilt as charged in the indictment and so found by the jury on the trial.

As to the confession in evidence, we observe as was done in the case of Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635, 636, that:

"In the cases noted the Supreme Court of the United States reached the conclusion that the confessions were clearly shown to have been involuntarily obtained and in addition constituted a vital chain in

---

[1] Ante, p. 1.

684

the State's case for conviction. Indeed these authorities are rested upon the doctrine that the accused was in this manner deprived of due process of law as guaranteed by the Federal Constitution. Illustrative is the expression of the court in Brown v. Mississippi, supra (297 U.S. [278], 279, 56 S.Ct. [461], 465, 80 L.Ed. 682) ; 'It would be difficult to conceive of methods more revolting to the sense of justice than those taken to procure the confessions of these petitioners, and the use of the confessions thus obtained as the basis for conviction and sentence was a clear denial of due process.'

"Nothing similar to such a situation is here presented."

It results from the foregoing that the judgment of the circuit court should be, and it is hereby, affirmed.

The date set for the execution of the sentence of the law on the defendant having passed pending this appeal, it is hereby ordered by this court, that Friday, the 26th day of March, 1943, be and the same is hereby set for the execution of the sentence of the law on this defendant.

Affirmed. Date of execution set for Friday, March 26, 1943.

All the Justices concur.

